784 So.2d 637 (2001)
Steve BLACKBURN, et al.,
v.
NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH.
Steve and Wendi Royer
v.
Scafco, Ltd., et al.
No. 2000-C-2668.
Supreme Court of Louisiana.
April 3, 2001.
*638 Judith R.E. Atkinson, Thomas E. Balhoff, Carlton Jones, III, Baton Rouge, Counsel for Applicant.
David O. Walker, Michael J. McNulty, III, Russell T. Tritico, Lake Charles, Counsel for Respondent.
KNOLL, J.
The issue before us concerns two-tier insurance coverage which provided reduced coverage of $10,000, the statutory minimum, under an endorsement. The lower courts determined that the endorsement did not apply, thus the face amount of the policy, $1,000,000, was applicable. For the following reasons we reverse, finding *639 the provision in the endorsement reducing coverage to the statutory minimum for anyone using a covered auto outside of the course and scope of employment applicable.

FACTS
The insurance coverage issue was triggered by a rear-end collision which occurred on Christmas morning, December 25, 1997, at 1:40 a.m. near DeQuincy, Louisiana. On that date, the defendant, Charles Rials, Jr. ("Rials"), who was intoxicated, was operating a 1996 Ford pick-up truck owned by Wheels Incorporated and leased to Rials' employer, Scafco, Ltd. ("Scafco"). Scafco is a subsidiary of Turner Industries and is in the business of erecting scaffolding pursuant to contract throughout Louisiana. Scafco usually had approximately 10 to 15 trucks which were assigned to Scafco superintendents and other supervisory personnel as an employee perk. In addition to the assigned trucks, there is usually one truck assigned to each plant site. The trucks assigned to the plant sites are called "yard trucks" and are primarily used to run errands on the plant site and pick up and deliver materials to the plant site.
Steve Clark ("Clark"), an employee of Scafco, was acting as a temporary supervisor in the months prior to the accident. In his capacity as temporary supervisor, Clark was given permission by Jackie Stone, the manager of Scafco, to use the yard truck to drive to work in the mornings and home from work in the evenings. Because of his temporary status, Clark did not sign the list of guidelines which every employee who is assigned a vehicle is required to sign. Instead, Clark simply began using the truck as though it were permanently assigned to him, including the use of the truck for personal errands. Clark also permitted Rials to use the truck on weekends for Rials' personal use.
On the evening of the accident, Rials had the truck with Clark's permission since Rials had to work Christmas morning and Clark did not. Clark was aware that Rials had no transportation of his own[1] and that the truck would be needed in the yard. On the evening before the accident, Rials went a local bar where he consumed approximately 6 or 7 beers before attending a party which he had been invited to by Clark. The party was at the home of Clark's uncle and Clark was present when Rials arrived. Clark spoke to Rials at the party, but the two never discussed the use of the truck or that Rials was becoming intoxicated. At the party Rials consumed approximately two mixed drinks and two more beers.
Also in attendance at the party were the plaintiffs, the Blackburns and the Royers ("the plaintiffs"). At approximately 1:30 a.m. on December 25, 1997, Rials left the party shortly after the plaintiffs and began driving toward his home. Ten minutes later, Clark was informed that Rials had been in an accident in the Scafco truck. Clark immediately left the party and went to the scene of the accident and saw that Rials had rear-ended the truck being operated by Mr. Blackburn in which the Royers were passengers.
Clark was suspended from employment with Scafco due to the accident and Rials was fired. Rials testified that he had never discussed the parameters of his permission to use the truck with anyone, including Clark, and that he had never been warned of the consequences of driving the *640 Scafco truck while intoxicated. The insurance policy limits that were in effect when Rials was operating the vehicle were never discussed with either Rials or Clark. It is not contested that Rials was acting outside of the course and scope of his employment, nor is it seriously contested that Rials had permission to use the truck.

PROCEDURAL HISTORY
The Blackburns and the Royers filed suit against Wheels Incorporated, Scafco, Rials, National Union Fire Insurance Company of Pittsburgh ("National Union"), and State Farm Mutual Automobile Insurance Company ("State Farm"). National Union insured the trucks which were leased by Scafco through a policy acquired by Turner Industries, Scafco's parent company. State Farm insured the Blackburns. The suits were consolidated and National Union filed a motion for summary judgment asserting that under Endorsement # 005 of the policy, the limit of liability coverage for the accident was the statutory minimum. The plaintiffs, along with State Farm, filed a cross-motion for summary judgment asserting that the policy limits for the accident were $1,000,000, the face amount of the policy.
The trial court granted the cross-motion for summary judgment filed by the plaintiffs and State Farm, setting the policy limits for the accident at $1,000,000, although it is unclear whether the trial court's reasons were based on Endorsement # 005 or the MCS-90 Endorsement. Specifically, the trial court found: (1) that Rials was not in the course and scope of his employment; (2) that the MCS-90 Endorsement was applicable to Scafco;[2] (3) that there was a conflict between the MCS-90 Endorsement and Endorsement # 005; and (4) that a provision in Endorsement # 005 allowed Scafco to give employees permission to use company vehicles outside of the course and scope of their employment. The trial court also found that Rials had permission to use the Scafco vehicle and that he was acting within the course and scope of that permission.
The court of appeal affirmed the trial court's ruling that there was $1,000,000 in coverage, holding that Endorsement # 005 allowed for the granting of permission to use a Scafco truck outside the course and scope of employment and that Rials was granted such permission. Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 99-1872, p. 7 (La.App. 3rd Cir.8/23/00), 771 So.2d 175. The court further found that, under the facts of this case, Rials was acting within the scope of that permission.[3] Accordingly, the trial court's ruling that defendant's policy limits were $1,000,000 was affirmed. We granted *641 National Union's writ to review the decision of the court of appeal concerning the interpretation of Endorsement # 005. Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 2000-2668 (La.11/27/00), 774 So.2d 986.

DISCUSSION
The sole issue in this writ is the interpretation of Endorsement # 005, which provides:
The most that we will pay on behalf of anyone using a coverage [sic] auto outside the scope of the permission of the Named Insured or on behalf of anyone using a covered auto outside of the course and scope of that person's employment with the Named Insured is the statutory minimum financial responsibility limit of the state having jurisdiction, but only if that person using a covered auto is an insured as defined herein, and only if coverage is provided.
The rules for the interpretation of an insurance contract are well established in our jurisprudence and our Civil Code.
An insurance policy is an aleatory contract subject to the same basic interpretive rules as any other contract. La. Civ.Code art.1912, cmt. e; Magnon v. Collins, 98-2822, p. 6 (La.7/7/99), 739 So.2d 191, 196; Peterson v. Schimek, 98-1712, p. 4 (La.3/2/99), 729 So.2d 1024, 1028; Smith v. Matthews, 611 So.2d 1377, 1379 (La. 1993). The policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La. Civ.Code art. 2045; Magnon, 98-2822 at 6, 739 So.2d at 196; Ledbetter v. Concord Gen. Corp., 95-0809, p. 3 (La.1/6/96), 665 So.2d 1166, 1169. Obviously, the initial determination of the parties' intent is found in the insurance policy itself. La. Civ.Code art.2046. In analyzing a policy provision, the words, often being terms of art, must be given their technical meaning. La. Civ.Code art. 2047. When those technical words are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written. La. Civ.Code art.2046; Magnon, 98-2822 at 7, 739 So.2d at 197. If, on the other hand, the contract cannot be construed simply, based on its language, because of an ambiguity, the court may look to extrinsic evidence to determine the parties' intent. Peterson, 98-1712 at 5, 729 So.2d at 1029.
The insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Dubois v. Parish Gov't Risk Mgmt. Agency Group Health, 95-546, p. 5 (La.App. 3 Cir. 1/24/96), 670 So.2d 258, 260; Shaw v. Fidelity & Cas. Ins. Co., 582 So.2d 919, 925 (La.App. 2nd Cir.1991); Landry v. Louisiana Hosp. Serv., Inc., 449 So.2d 584, 586 (La.App. 1st Cir.1984); Barber v. Best, 394 So.2d 779, 781 (La.App. 4th Cir.1981).. Thus, it is National Union's burden to prove that the exclusion in Endorsement # 005 is applicable to this accident.
The court of appeal found that Endorsement # 005 specifically implied that an employee could be given permission to use a company vehicle outside the course and scope of employment. According to the court of appeal, when an employee is operating a vehicle with the permission of the insured, but outside the course and scope of his employment, liability coverage of $1,000,000 under the general policy would be in force.
National Union argues that the court of appeal's interpretation is contrary to the plain language of Endorsement # 005, *642 which provides that the amount of coverage will be limited to the statutory minimum when an employee is "using a covered auto outside of the course and scope of that person's employment...."
It is not disputed that Rials had Clark's permission to use the truck. In essence, the lower courts concluded that because Rials was using the truck with permission, he was also acting outside the course and scope of his employment with permission; therefore, the endorsement was not applicable. National Union argues that whether Rials had permission or not is irrelevant, since he was acting outside the course and scope of his employment. We agree.
The dispute centers around the effect, if any, that is given to the remaining provision in the endorsement after the word "or." National Union contends that the endorsement is clear and unambiguous, and that the disjunctive "or" means that the endorsement will apply to limit liability under the policy, if either situation exists.
The lower courts did not examine the endorsement as containing two alternative provisions; no meaning or effect was given to the disjunctive "or" in the endorsement. The court of appeal determined that because Rials was granted permission to use the truck, the endorsement "anticipates instances in which an employee is given permission to operate a company vehicle outside the course of that person's employment." Blackburn, 99-1872 at 12, 771 So.2d at 183. The court of appeal then concluded that if Rials was operating the truck with permission, the liability coverage of $1,000,000 under the general policy would apply.
We agree with National Union's contention and find that the court of appeal erred by failing to include the remaining provision of the endorsement, "or ... outside of the course and scope of that person's employment...." The court of appeal interpreted the endorsement to mean that if one has permission to use the company truck, the endorsement is not applicable regardless of whether the person is acting outside the course and scope of his employment. We find that interpreting the endorsement in this manner misinterprets the word "or" between the two provisions as though "or" meant "and." The word "or" is a clear, unambiguous term and its use between the two provisions made alternative events. The two provisions are separated by the disjunctive "or," not the conjoining "and." Thus, when reading the endorsement giving the term "or" a disjunctive interpretation rather than as "and," it is clear that the endorsement applies, since Rials was acting outside the course and scope of his employment.
We agree with the court of appeal's determination that: "The language of the # 005 Endorsement is clear and unambiguous and anticipates instances in which an employee is given permission to operate a company vehicle outside the course of his employment." Id. However, when an employee, such as Rials, does operate a company vehicle outside the course and scope of his employment, "[t]he most that we will pay ... is the statutory minimum financial responsibility...." Although Rials had permission to use the truck, this permission does not somehow nullify the second provision, "or" outside the course and scope of employment.
The coverage scenario created by Endorsement # 005 has been referred to by this Court and other courts as "two-tier" coverage.[4]Lindsey v. Colonial Lloyd's *643 Ins. Co., 595 So.2d 606, 614 (La.1992). We determined that two-tier coverage is legal and that it did not contravene any public policy as long as the "lower level of coverage [met] the statutory minimum requirements." Id. In Lindsey, the insurance policy contained an endorsement which had the effect of lowering the coverage from $500,000 to the minimum amount of coverage required by law when the insured and the customer would agree to the lower limits.[5] The Court determined that there "is no statute or public policy requirement that all classes of insured under a policy receive the same amount of coverage." William Shelby McKenzie & H. Alston Johnson, III, LOUISIANA CIVIL LAW TREATISE, INSURANCE LAW AND PRACTICE § 57 (Vol.15-1996). Because the policy provided the "minimum liability coverage required by statute, there was no public policy argument to invalidate the agreement reached by the parties." Id. Like the policy in Lindsey, Endorsement # 005 provides two tier coverage; the insurer reduced liability coverage from $1,000,000 to the statutory minimum, $10,000, when any employee is driving the vehicle outside the scope of the permission or outside of the course and scope of employment.

CONCLUSION
We find that Endorsement # 005 is not ambiguous because of the insurer's use of the disjunctive "or" in the policy. The endorsement clearly creates two distinct situations where liability coverage is reduced: where an employee is acting outside the scope of permission or when an employee is acting outside of the course and scope of employment. The technical words in the endorsement are unambiguous, requiring that the insurance contract be enforced as written. La. Civ.Code art. 2046; Magnon, 98-2822 at 7, 739 So.2d at 197. Since Rials was acting outside of the course and scope of employment, the endorsement applies. Thus, liability coverage is reduced to the statutory minimum.

DECREE
For the foregoing reasons, the judgment of the court of appeal affirming the cross-motion for summary judgment of the Blackburns, Royers, State Farm, and Rials is reversed and set aside. The motion for summary judgment of National Union is hereby granted, setting the limits of liability coverage for Rials' accident at the statutory minimum. This case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The record shows that Rials had a drinking problem and that his own truck was totaled in a previous alcohol related accident.
[2] The MCS-90 endorsement pertains to the financial responsibility requirements of the Motor Carrier Act of 1980 which was enacted by the Interstate Commerce Commission. The court of appeal reversed the trial court's finding that the MCS-90 endorsement was applicable because the truck Rials was driving was not engaged in the type of transportation that would bring it under the definition of a motor carrier. We denied the plaintiffs' writs on this issue. Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 2000-2671 (La.11/27/00), 775 So.2d 449; Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 2000-2672 (La.11/27/00), 775 So.2d 450. Therefore, our disposition of this case does not include a discussion of the MCS-90 endorsement.
[3] According to the CA, the record is replete with evidence that Rials was granted permission to use the Scafco vehicle. Clark allowed him to use it every weekend from the first weekend in November until the accident. Testimony also established that Clark knew Rials frequented bars and had a drinking problem. Moreover, on the night of the accident, Clark knew Rials had the truck in his possession, that he was at the party and that he was drinking.
[4] Endorsements such as Endorsement # 005 have also been referred to as "reduction clause[es]." See, William Shelby McKenzie & H. Alston Johnson, III, LOUISIANA CIVIL LAW TREATISE, INSURANCE LAW AND PRACTICE § 232 (Vol.15-1996), citing, Graves v. Traders & General Ins. Co., 252 La. 709, 214 So.2d 116 (1968) (a reduction clause in policy, which provided for limits of $100,000, served to restrict coverage in certain cases to the minimum amount required by law.)
[5] See also, Pitts v. Pickens, 655 So.2d 520 (La.App. 1st Cir.), writ denied, 662 So.2d 469 (La.1995), wherein the court determined that a similar endorsement which limited the maximum coverage provided by the policy controlled the situation presented in the case and found that the minimum limits required were the appropriate level of coverage.