STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CW 11-1107 consolidated with CA 12-48

CALCASIEU PARISH SCHOOL BOARD

VERSUS

MARY MILLER, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2009-5619
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

AFFIRMED.

Christopher M. Trahan
Raggio, Cappel, Chozen & Berniard
1011 Lakeshore Drive, Suite 500
Lake Charles, LA 70601
(337) 436-9481
COUNSEL FOR PLAINTIFF/APPELLEE:
    Calcasieu Parish School Board

Darren A. Patin
Shailendra U. Kulkarni

**Hailey, McNamara, Hall, Larmann & Papale, L.L.P.**
**One Galleria Boulevard, Suite 1400**
**Metairie, LA 70001-8288**
**(504) 836-6500**
**COUNSEL FOR DEFENDANT/APPLICANT:**
     **Louisiana Citizens Property Insurance Corporation**

**PETERS, J.**

One of the defendants in this litigation, Louisiana Citizens Property Insurance Company, appeals the grant of a summary judgment in favor of the Calcasieu Parish School Board on the issue of insurance coverage. For the following reasons, we affirm the trial court judgment in all respects.

**DISCUSSION OF THE RECORD**

This litigation arises out of a December 4, 2008 accident involving Katherine Kunzweiler, an employee of the Calcasieu Parish School Board (School Board). On that day, while working as an art teacher at Washington Magnet High School in Calcasieu Parish, Ms. Kunzweiler sustained personal injuries when she was knocked down by a student while attempting to break up an altercation between the student and another student. In the matter now before us, the School Board is attempting to recover, from the offending student's mother and the homeowner's insurance policy issued to her by Louisiana Citizens Property Insurance (Louisiana Citizens), benefits it paid to Ms. Kunzweiler under the Louisiana Workers' Compensation Act.

The underlying facts are not in dispute. On the morning of December 4, 2008, two female students in Ms. Kunzweiler's class, Keiarea Miller (Keiarea) and a female student identified in the record as "Shondell," began a verbal altercation. Ms. Kunzweiler, who was in an adjacent room when the verbal altercation began, entered the room to investigate and positioned herself between the two students. At some point after Ms. Kunzweiler entered the room, Keiarea moved aggressively toward Shondell. As Keiarea came in contact with Ms. Kunzweiler, she grabbed her teacher's upper arms and forcefully moved her aside, causing Ms. Kunzweiler to fall to the floor.

Because of the injuries sustained by Ms. Kunzweiler, the School Board began paying her workers' compensation and medical benefits. On November 20, 2009, the School Board instituted suit against Mary Miller as natural mother and natural tutrix of Keiarea, and Louisiana Citizens. The insurer met the suit by filing, among other pleadings, a motion for summary judgment wherein it asserted that the homeowner's policy issued to Ms. Miller did not provide coverage for the damages claimed by the School Board. In response to Louisiana Citizens' motion, the School Board filed a motion for summary judgment of its own seeking a judgment declaring that the Louisiana Citizens' policy did provide coverage for the damages sustained.

At the June 14, 2011 hearing on the summary judgment motions, the trial court rejected Louisiana Citizens' motion and took the School Board's motion under advisement. On June 21, 2011, the trial court issued written reasons for judgment granting the School Board's motion and, on the next day, executed a judgment encompassing both rulings.

Louisiana Citizens timely filed an application for supervisory writs addressing the denial of its motion for summary judgment and perfected an appeal addressing the grant of summary judgment to the School Board. On January 26, 2012, this court granted Louisiana Citizens' application for supervisory writs for the limited purpose of consolidating that writ application with Louisiana Citizens' appeal.

**OPINION**

Both summary judgments address the interpretation of the same policy language. The policy includes a standard form declarations section together with

2

specific endorsements which alter some of the declaratory language of the standard form.

Our supreme court has set out the principles to be used in interpreting insurance policies:

> In analyzing insurance polices, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *LeBlanc v. Aysenne*, 05-0297, p. 3 (La.1/19/06), 921 So.2d 85, 89; *Edwards v. Daugherty*, 03-2103, p. 11 (La.10/1/04), 883 So.2d 932, 940; *Cadwallader v. Allstate Insurance Co.*, 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; *Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co.*, 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763.

> According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. *See*, LSA-C.C. art. 2045; *Edwards*, 03-2103, p. 11, 883 So.2d at 940; *Cadwallader*, 02-1637 at 3, 848 So.2d at 580; *Blackburn v. National Union Fire Insurance Co. of Pittsburgh*, 00-2668, p. 6 (La.4/3/01), 784 So.2d 637, 641. Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. *See*, LSA-C.C. art. 2046; *Succession of Fannaly v. Lafayette Insurance Co.*, 01-1355, p. 3 (La.1/15/02), 805 So.2d 1134, 1137; *Blackburn*, 00-2668 at 6, 784 So.2d at 641 ("[T]he initial determination of the parties' intent is found in the insurance policy itself."). In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. *See*, LSA-C.C. art. 2047; *Edwards*, 03-2103 at 11, 883 So.2d at 940-941; *Cadwallader*, 02-1637 at 3, 848 So.2d at 580; *Succession of Fannaly*, 01-1355 at 3, 805 So.2d at 1137.

> An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. *See*, LSA-C.C. art. 2050; *Hill v. Shelter Mutual Insurance Co.*, 05-1783, p. 3 (La.7/10/06), 935 So.2d 691, 694; *Succession of Fannaly*, 01-1355 at 4-5, 805 So.2d at 1137; *Peterson v. Schimek*, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1029. Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *LeBlanc*, 05-0297, at 3, 921 So.2d at 89; *Edwards*, 03-2103 at 11, 883

3

So.2d at 941; *Cadwallader*, 02-1637 at 3, 848 So.2d at 580; *Peterson*, 98-1712 at 5, 729 So.2d at 1028.

When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See*, LSA-C.C. art. 2046; *Hill*, 05-1783 at 3, 935 So.2d at 694; *Peterson*, 98-1712 at 4-5, 729 So.2d at 1028. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Cadwallader*, 02-1637 at 4, 848 So.2d at 580; *Succession of Fannaly*, 01-1355 at 4, 805 So.2d at 1138. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. *Edwards*, 03-2103 at 12, 883 So.2d at 941; *Succession of Fannaly*, 01-1355 at 4, 805 So.2d at 1138; *Peterson*, 98-1712 at 5, 729 So.2d at 1029.

Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. *See*, LSA-C.C. art. 2056; *Succession of Fannaly*, 01-1355 at 4, 805 So.2d at 1138; *Peterson*, 98-1712 at 5, 729 So.2d at 1029. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Edwards*, 03-2103 at 12, 883 So.2d at 941; *Cadwallader*, 02-1637 at 4, 848 So.2d at 580; *Carrier v. Reliance Insurance Co.*, 99-2573, p. 12 (La.4/11/00), 759 So.2d 37, 43. This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. *Edwards*, 03-2103 at 12, 883 So.2d at 941; *Cadwallader*, 02-1637 at 4, 848 So.2d at 580; *Carrier*, 99-2573 at 12, 759 So.2d at 43.

The determination of whether a contract is clear or ambiguous is a question of law. *Edwards*, 03-2103 at 12-13, 883 So.2d at 941; *Cadwallader*, 02-1637 at 4, 848 So.2d at 580; *Louisiana Insurance Guaranty Association*, 93-0911 at 7, 630 So.2d at 764. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. *Robinson v. Heard*, 01-1697, p. 4 (La.2/26/02), 809 So.2d 943, 945; *Peterson*, 98-1712 at 5, 729 So.2d at 1029.

4

*Sims v. Mulhearn Funeral Home, Inc.*, 07-54, pp. 7-10 (La. 5/22/07), 956 So.2d 583, 588-90.

The pertinent language of the standard form portion of Louisiana Citizens' policy addressing personal liability and medical expense issues reads as follows:

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> **1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured", and
>
> **2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F - Medical Payments To Others**

> We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:
>
> . . . .
>
> **2.** To a person off the "insured location", if the "bodily injury":
>
> . . . .
>
> > **b.** Is caused by the activities of an "insured";

This coverage language is limited by the exclusion section of the policy.

**SECTION II – EXCLUSIONS**

. . . .

5

**E.  Coverage E - Personal Liability and Coverage F – Medical Payments To Others**

Coverages E and F do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.**  Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

The problem in the interpretation of the policy language is that the Louisiana Citizens policy contains an endorsement entitled "**SPECIAL PROVISIONS – LOUISIANA**" which rewrites some of the language governing liability coverage and exclusions from that coverage.[1]  Of significance to the matter before us is the fact that the endorsement completely rewrote and replaced the language of **Coverage E - Personal Liability and Coverage F – Medical Payments To Others** found in the standard form policy.  This endorsement reads as follows:

**E.  Coverage E - Personal Liability and Coverage F - Medical Payments to Others**

Paragraph **1.** Is replaced by the following in all forms and Endorsement **HO 24 73:**

**1. Expected Or Intended Injury**

With respect to *loss*:

---

[1] With regard to liability coverage, the endorsement merely changes paragraph A(1) of **SECTION II – LIABILITY COVERAGES**  to read "Pay up to our limit of liability for the damages for which an "insured" is legally liable[.]"  This particular change does not affect the analysis required in this opinion.

6

**a.** Caused by fire; which is expected or intended by the "insured" even if the "bodily injury" or "property damage":

  **(1)** Is of a different kind, quality, or degree than initially expected or intended; or

  **(2)** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.a.** does not apply to "bodily injury" resulting from the use of reasonable force by the "insured" to protect persons or property.

**b.** Caused by a *peril* other than fire and with respect to all "insureds" covered under this policy which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

  **(1)** Is of a different kind, quality, or degree than initially expected or intended; or

  **(2)** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.b.** does not apply to "bodily injury" resulting from the use of reasonable force by one or more "insured" to protect persons or property.

(Emphasis added.)

In its June 20, 2011 reasons for granting the School Board's motion for summary judgment on the coverage issue, the trial court stated the following:

Section II, Coverage E is the personal liability coverage of the policy. Paragraph E provides exclusions to coverage E. The language of paragraph 1 of paragraph E was clear in the original policy, but is not so clear in the substituted paragraph 1 ("Special Provisions – Louisiana"). The lack of clarity is due to the use of the phrases "With respect to loss," "caused by fire" and "caused by a peril other than fire …." A "loss" is not a liability. It is an insured loss, as in a Sect. 1 fire or other property loss. Likewise, a "peril" is not a liability. As a result, the School Board correctly argues that the attempt to use the "expected or intended injury" language as a liability exclusion fails because it is placed in the context of a "loss" or "peril."

Louisiana Citizens asserts that this language excludes coverage for any injury derived from the intentional act of an insured where bodily injury of any

7

kind was expected or intended by an insured. However, we agree with the trial court that, due to the Louisiana-specific provision's use of the terms "loss" and "peril," this language does not exclude liability caused by an expected or intended injury.

Under the policy's exclusion language, as amended by the Louisiana-specific provision, liability coverage and medical payments to others would not be provided "[w]ith respect to loss . . . [c]aused by a peril other than fire and with respect to all 'insureds' covered under this policy which is expected or intended by one or more 'insureds' . . . ." "Peril" is not defined in the policy, nor is it used in Section Two, which sets out liability coverage. However, it is used extensively in Section One, which sets out property coverage. In that section, there is a subsection on "PERILS INSURED AGAINST," which states that loss to property is covered when it is caused by any of the following "perils": fire, lightning, windstorm, hail, explosion, riot, civil commotion, aircraft, vehicles, smoke, vandalism, malicious mischief, or theft.

Thus the language at issue, "[c]aused by a peril other than fire . . . ," would seem to refer to the sorts of perils that are referenced elsewhere in the policy, not the sort of incident that resulted in Ms. Kunzweiler's injuries.

Louisiana Citizens argues that the language in the Louisiana Special Provisions E.1.b.(1) and (2) demonstrates that the exclusion applies because it specifically discusses "bodily injury" and "property damage" that "[i]s of a different kind, quality, or degree than initially expected or intended; or (2) [i]s sustained by a different person, entity, real or personal property, than initially expected or intended." However, this language does not establish the content of

the exclusion; it only forecloses having it not apply when there are allegations of misplaced intent.

Based on our review of the policy language, we find that the policy's Louisiana-specific expected or intended injury exception language is ambiguous. Consequently, the trial court did not err in denying Louisiana Citizens' motion for summary judgment and granting summary judgment in favor of the School Board.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's denial of Louisiana Citizens Property Insurance Corporation's motion for summary judgment and its grant of summary judgment in favor of the Calcasieu School Board. We assess all costs of this appeal and writ application to Louisiana Citizens Property Insurance Corporation.

**AFFIRMED.**