# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 13-495

## CLAYTON WALKER AND DANIELLE WALKER

## VERSUS

## JOE HEBERT, ET AL.

**\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2010-0637-B
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS
JUDGE**

**\*\*\*\*\*\*\*\*\***

On rehearing, court composed of Sylvia R. Cooks, Marc T. Amy, Elizabeth Pickett, Billy H. Ezell, and Shannon Gremillion, Judges.

**AFFIRMED IN PART, AMENDED IN PART, RENDERED.**
**Amy, J., dissents on rehearing and assigns reasons.**
**Gremillion, J., dissents for the reasons assigned by Judge Amy.**
**Pickett, J., concurs and assigns written reasons.**

Mark G. Artall
P.O. Box 53942
Lafayette, LA 70505
(337) 233-1777
**ATTORNEY FOR PLAINTIFF/APPELLEES**
**Clayton Walker and Danielle Walker**

Onebane Law Firm
Richard J. Petre, Jr.
P.O. Box 3507
Lafayette, LA 70502-3507
(337) 237-2660
**ATTORNEY FOR DEFENDANT/APPELLANT**
**Essentia Insurance Company**

Dan Boudreaux
9100 Bluebonnet Centre Blvd., Suite 300
Baton Rouge, LA 70809
(225) 293-7272
**ATTORNEY FOR INTERVENOR/APPELLEE**
**Liberty Mutual Insurance Company**

**Cooks, Judge.**

## FACTS AND PROCEDURAL HISTORY

Clayton Walker (Plaintiff) was allegedly injured on September 22, 2009, when a vehicle driven by Joe Hebert (Hebert), and owned by his brother, Donald Hebert (Donald), pinned Plaintiff between the vehicle and a building. Hebert was insured with Essentia Insurance Company (Essentia) at the time of this accident on a policy covering his 1969 Chevrolet Camaro with an effective policy period of March 15, 2009, through March 15, 2010. Plaintiff sued Hebert and Essentia among others. Essentia filed a Motion for Summary Judgment asserting an exclusion provision in the policy rendered Essentia free from any responsibility for damages suffered by Plaintiff.

The trial court denied Essentia's Motion for Summary Judgment finding the policy ambiguous because it contained provisions which both excluded and included coverage over non-owned vehicles being used by the insured. Essentia later filed a second Motion for Summary Judgment, and a Motion for Partial Summary Judgment, to which Plaintiffs filed Oppositions and a Cross Motion for Summary Judgment. The trial court again denied Essentia's Motions and granted Plaintiffs' Motion for Summary Judgment. The trial court specifically found "there was a policy in effect on the date of the accident" and the policy is "not against public policy." Essentia asserted that the policy had been cancelled with an effective date of cancellation of September 22, 2009, 12:01 A.M. The accident occurred on September 22, 2009, after 12:01 A.M. The trial court found the policy provides coverage in the amount of "$100,000.00 per person and $300,000.00 per accident." On the "Declarations" page of the policy coverage limits are set forth as: "A. Bodily Injury & Property Damage: $100,000.00 Per Accident [;] B. Medical Payments: $1,000.00 Per Person Per Accident [;] and C. Uninsured

Motorists Bodily Injury: $30,000.00 Per Accident." Essentia appeals the trial court judgment.

## LEGAL ANALYSIS

Under the provisions of La.Code Civ. P. art 966(B)(2), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." We review summary judgments de novo "under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Dronet v. Safeway Ins. Co.*, 95-1471, p. 2 (La.App. 3 Cir. 11/7/97), 703 So.2d 97, 99, *citing Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville*, 615 So.2d 318 (La. 1993). "A dispute as to the issue of whether, as a matter of law, the language in an insurance policy provides coverage to a party can properly be resolved within the context of a motion for summary judgment." *Id.*, *citing Domingue v. Reliance Ins. Co.*, 619 So.2d 1220 (La.App. 3 Cir. 1993).

Before we address the question of coverage we will address Essentia's argument that even if there is coverage under the policy, the policy was cancelled prior to the accident for which coverage is sought. Relying solely on its representations in its Admissions of Fact, Essentia asserts that on November 4, 2009, Hebert signed a form cancelling his policy on his 1969 Camaro with a *retroactive* effective date of September 22, 2009, 12:01 A.M. Essentia asserts this came about through a series of events following the destruction by fire of Hebert's Camaro on August 14, 2009. According to Essentia, Hebert advised them after the destruction of his car "he would want to cancel his policy if he did not buy another classic car to replace the insured 1969 Chevrolet Camaro lost in the fire." They further assert that on October 28, 2009, Hebert informed them that as he had not

2

yet bought any replacement car he wanted to cancel the policy. According to Essentia's Admission of Facts, Hebert "signed the policy cancellation form showing September 22, 2009, at 12:01 a.m. as the cancellation date," and Essentia "received the cancellation form [on November 11, 2009] and cancelled the policy retroactive to September 22, 2009, at 12:01 a.m., the date on which Essentia and Mr. [Joe] Hebert settled the amount for loss on the insured 1969 Camaro…" The record does not contain a copy of this form. Be that as it may, if we accept Essentia's "admissions of fact" these facts do not establish that coverage was not in effect on September 22, 2009, when the accident injuring Plaintiff Walker occurred. Under these alleged facts Hebert had not made a decision to cancel his insurance coverage when the accident involving Walker occurred, and did not come to that decision until just over a month later. Until then, the policy remained in effect as it was still within the original policy period. When the accident occurred on September 22, 2009, Walker and Hebert had vested rights in the insurance policy. This court has long recognized insurance policies cannot be canceled retroactively. *Ceasar v. New England Ins. Co.*, 616 So.2d 850 (La.App. 3 Cir. 1993). Additionally, Louisiana Revised Statutes 22:885(A) (emphasis added) provided in 2009 as follows:

> Cancellation by the insured of any policy which by its terms is cancellable at the insured's option or of any binder based on such policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation *prior to or on the effective date of cancellation.* In event the policy or binder has been lost or destroyed and cannot be so surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured's written statement setting forth the fact of such loss or destruction.

As the statute provides that notice of cancellation by an insured must be *prior to or on* an effective date of cancellation, it is clear that the policy cannot be canceled retroactively. By Essentia's own admission, Hebert did not send written

notice to cancel his policy until after the accident involving Plaintiff occurred, and not until after the "effective date" of cancellation recited in the notice. Likewise, the insurance policy covering Hebert's classic Camaro expressly provides the manner in which the policy may be cancelled by the insured (emphasis added):

> Cancellation. This policy may be canceled during the policy period as follows:
>
> 1. The named insured shown in the Declarations may cancel by:
>
>    a. Returning this policy to us; or
>
>    b. *Giving us advance written notice of the date cancellation is to take effect.*

Under Essentia's own version of the facts regarding the insured's cancellation of the policy, Hebert did not give any notice of cancellation prior to September 22, 2009, thus that date cannot be the date of cancellation as to do so runs afoul of both the contractual provisions of this insurance contract and the provisions of La. R.S. 22:885. We therefore hold, as did the trial court, the policy insuring Hebert's Camaro was in effect on the date of Plaintiff's accident.

Next, we must determine whether the policy provides coverage for Hebert while driving his brother's vehicle. Essentia asserts that the policy specifically excluded coverage for any liability "arising out of the ownership, maintenance, or use of any vehicle other than 'your covered auto.'" This provision appears in the basic policy under the heading "Part A. Liability Coverage. Exclusions." Plaintiffs assert the Essentia policy also contained an amendment of "Part A" of the policy expressly affecting policies issued to Louisiana residents. Our review of the record supports Plaintiffs' assertion.

The trial judge found the policy provisions ambiguous and therefore found the ambiguity must be resolved in favor of coverage. We too, find Exclusions Number 10 and 8, when read in full, are ambiguous, and, were they to be given

4

effect, would result in coverage for the reason relied on by the trial court. Exclusion Number 8 reads:

> 8. Using:
>
> . . . .
>
> c. Any vehicle, other than "your covered auto" without the express or implied permission of the owner of such vehicle.

Exclusion Number 10 reads:

> 10. Arising out of ownership, maintenance, or use of any vehicle other than "your covered auto."

If the language of Exclusion Number 8 had ended with a period after "your covered auto," the two provisions would not be ambiguous, but the modifying phrase following "your covered auto" in Exclusion 8 renders it ambiguous with the simple statement in Exclusion 10. Such an ambiguity is construed in favor of coverage. Moreover, Louisiana law *requires* that the policy provide coverage to the insured when he is a permissive user of another person's vehicle. Be that as it may, there are additional compelling reasons which lead us to the conclusion that the Essentia policy, as modified by the Louisiana Endorsement to bring it into conformity with the mandatory requirements of Louisiana law, provides coverage.

Essentia focuses on the wording of Exclusion Number 10 in the original Essentia policy. This focus is completely misplaced. The focus on deciding the issue of insurance coverage of a vehicle owned by a Louisiana resident must begin and end with the mandatory insurance provisions of Louisiana law applicable to all motor vehicles owned and operated in this state.

Louisiana Revised Statutes 32:900 provides in pertinent parts (emphasis added):

> A. A "Motor Vehicle Liability Policy" as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof

5

of financial responsibility, and issued except as otherwise provided in R.S. 32:899, by an insurance carrier duly authorized to transact business in this state, *to or for the benefit of the <u>person</u> named therein as insured.*

B. Such owner's policy of liability insurance:

(1) Shall designate by explicit description or by appropriate reference to all motor vehicles with respect to which coverage is thereby to be granted; and

(2) *Shall insure the person named therein* and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
. . . .

C. *Such operator's policy of liability insurance* **shall** *insure the person named as insured therein <u>against loss from the liability imposed upon him by law for damages arising out of the use by him of **any motor vehicle not owned by him**, within the same territorial limits <u>and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.</u>*

D. Such motor vehicle liability policy *shall* state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability, and *shall* contain an agreement or **be endorsed that insurance is provided thereunder in accordance with the coverage defined in this Chapter** as respects bodily injury and death or property damage, or both, and *is subject to all the provisions of this Chapter.*

. . . .

E. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

. . . .

(4) The policy, the written application therefor, if any, and **any rider or endorsement which does not conflict with the provisions of the Chapter** shall constitute the entire contract between the parties.

The only exception to mandatory coverage which could be applicable in this case is contained in La. R.S. 32:861(A)(1), for automobiles *"used primarily for exhibit or kept primarily for use in parades, exhibits, or shows…"* It is a very *narrow exception* to Louisiana's mandatory auto insurance law. *There is no exemption from coverage in Louisiana for a "hobby" car such as Mr. Hebert's classic car.* According to his testimony, Hebert drove his car on the public roads for his own pleasure and only "exhibited" it in the sense that anyone coming to his home or seeing him drive by on the roadways could see his classic car. He did not drive it "primarily" in parades and he did not enter it in car shows or exhibitions.

Likewise, Louisiana law clearly requires the owner of any motorized vehicle in this state to carry minimum uninsured/underinsured motorist coverage (UM coverage) unless the insured signs a waiver indicating his refusal of UM coverage. *See* La. R.S. 22: 1295, and *Bergeron v. Liberty Mut. Ins. Co*., 12-86 (La.App. 3 Cir. 6/6/12), 92 So.3d 645, *writ denied*, 12-1538 (La. 10/12/12), 98 So.3d 873, and *Holloway v. Shelter Mut. Ins. Co*., 03-896 (La.App. 3 Cir. 12/10/03), 861 So.2d 763, *writ denied* 04-87 (La. 3/19/04), 869 So.2d 854. Hebert did not sign any waiver of coverage and his policy with Essentia reflects he had UM coverage in the amount of $30,000.00 per accident. Under the "State Conformance Endorsement – Louisiana" provisions, the policy changed "Exclusion Provisions" regarding uninsured motorists coverage replacing the original policy language of Exclusion (B) 3, which provided "[w]e do not provide Uninsured Motorists Coverage for 'bodily injury' sustained by any 'insured': Using your 'covered auto' without a reasonable belief that that 'insured' is entitled to do so" to read, as amended:

> A. We do not provide Uninsured Motorists Coverage for 'bodily injury' sustained by:
> . . . .

[3] a. [Any 'insured' using]: 'Your covered auto' without your express or implied permission; or

b. Any vehicle, other than 'your covered auto', without the express or implied permission of the owner of such vehicle.

Essentia argues that such "exclusions" do not "provide" coverage, and, while that statement may be true, it gets Essentia nowhere. *Louisiana law mandates a minimum UM coverage* unless appropriately waived in writing. No one contends Hebert signed any written waiver of UM coverage. Essentia could not issue a policy to Hebert in Louisiana without providing such coverage. Hebert's Essentia policy contains mandatory UM coverage, as required by Louisiana law, and only exempts from such coverage two permissible scenarios, neither of which is applicable herein. This "exclusion" does not itself "provide" coverage, it is *required* by law. This policy provision is consistent with other provisions in the policy which demonstrate the policy provides UM Coverage mandated by Louisiana law. Furthermore, on the declarations page of the policy, the policy explicitly sets forth under the heading "Liability Coverage", Part C., "Uninsured Motorists Bodily Injury: $30,000.00 Per Accident." Obviously the policy provides such coverage as amended by the Louisiana State Conformance Endorsement, aptly named as it brings the Essentia policy into conformity with Louisiana mandatory insurance laws. And, as La. R.S. 22:1295(1)(a)(iii) provides, the "requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state."

Essentia attempts to ignore Louisiana's mandatory motor vehicle insurance requirements altogether. Instead, it relies on "a number of exclusions" in the original Essentia policy (a non-conforming policy) and rests on the language of Exclusion Number 10, finding that despite the changes mandated by the Louisiana

8

State Conformance Endorsement, Exclusion Number 10 excludes coverage "[a]rising out of ownership, maintenance, or use of any vehicle other than 'your covered auto.'" *This policy provision can have no force or effect in Louisiana as it is contrary to our mandatory motor vehicle insurance laws. See* La.R.S. 32: 900(C) *infra*.

Louisiana law does not permit any insurance company to include language in a policy covering a Louisiana motor vehicle *owner* to provide that its policy only extends to a particular vehicle rather than covering the *owner, the person insured*, when driving any automobile, including an automobile owned by someone else, if he is a permissive driver of that vehicle. *Id*. Hebert was a permissive driver of his brother's vehicle. This provision appears in the basic policy under the heading "Part A. Liability Coverage. [Exclusions.]" Essentia was obviously aware that the original policy did not comport with Louisiana's mandatory requirements. This is no doubt the very reason *the Essentia policy also contained an amendment of "Part A" of the policy expressly affecting policies issued to Louisiana residents.* The Policy reads: (emphasis added)

> ***THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.***
> STATE CONFORMANCE ENDORSEMENT – LOUISIANA
>
> *The following amendment changes the policy* to conform with Louisiana state laws. Please read your entire policy *for full details about your coverages.*
>
> I.    PART A – LIABILITY COVERAGE
>   A. *Paragraph A. of the Insuring Agreement is **replaced** by the following:*
>       INSURING AGREEMENT
>       *We will pay damages for "bodily injury" or "property damage" for which any "**insured**" becomes legally responsible because of an auto accident.* We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this

> coverage has been exhausted by payment of judgments or
> settlements.
>
> . . . .
>
> In addition to our limit of liability we will pay on behalf of
> an "insured":
>
> Prejudgment interest awarded against the "insured" on that
> part of the judgment we pay.

The above quoted policy language clearly provides coverage for this policy *covering a Louisiana insured* and as it plainly says, *replaces* paragraph (A) with a provision providing coverage under this policy for a Louisiana resident, such as Hebert, in conformity with Louisiana law. As our courts have repeatedly held:

> When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See*, LSA-C.C. art. 2046; *Hill v. Shelter Mutual Ins. Co.*, 05-1783 (La.7/10/06), 935 So.2d 691, 694; *Peterson v. Schimek*, 98-1712 (La.3/2/99), 729 So.2d 1024, 1028. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La.6/27/03), 848 So.2d 577, 580; *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355 (La.1/15/02), 805 So.2d 1134, 1138. *The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. Edwards v. Daugherty*, 03-2103 (La.10/1/04), 883 So.2d 932, 941; *Succession of Fannaly*, 01-1355 at 4, 805 So.2d at 1138; *Peterson*, 98-1712 at 5, 729 So. 2d at 1029.

*Calcasieu Par. Sch. Bd. v. Miller*, 11-1107, p. 4 (La.App. 3 Cir. 6/6/12), 92 So.3d 1200, 1203 (emphasis added).

By the express terms of the policy, the Louisiana State Conformance Endorsement "[c]hanges the policy," and, as the caption states, brings all of the policy provisions into conformity with Louisiana's mandatory motor vehicle insurance laws. This fact is set forth in the endorsement in all capital letters, presumably to emphasize the change in coverage. It is followed by the admonition

10

to "read it carefully." The endorsement which effected changes in the policy clearly and unambiguously states *"We will pay damages for 'bodily injury' or 'property damage' for which any <u>'insured'</u> becomes legally responsible because of an auto accident."* Nothing could be plainer. No one questions the fact that Hebert is the "insured" under the policy and he may become responsible for injury to Walker depending on the outcome of Walker's suit. The policy clearly provides limits of coverage on the Declarations page which includes $100,000.00 bodily injury and property damage per accident; $1,000.00 medical payments per person per accident; and $30,000.00 uninsured motorists bodily injury per accident.

Essentia attempts to bolster its position by reference to the paucity of the annual fee charged for its policy, and by the reassurance that its classic car policy anticipates, yea, requires, a co-existing regular-use policy covering a more regularly used, non-classic vehicle. We reject Essentia's contention as to the paucity of the fee charged. It was Essentia's responsibility, and choice, as to how to determine its rate for the policy it issued which must comply with Louisiana law. We also reject Essentia's assertion that the exception in La. R.S. 32:861(A)(1) for exhibit/parade automobiles bolsters its argument that the classic automobile policy at issue is not against public policy. That provision provides a very narrow exemption from mandatory liability insurance coverage only for an automobile "used primarily for exhibit or kept primarily for use in parades, exhibits, or shows." *Id*. The only evidence of record introduced at the motion for summary judgment concerning Hebert's use of his classic car as his hobby was his deposition testimony which establishes that his classic car did not qualify for the narrow exemption for cars "primarily used" for exhibition or in parades. There is no exemption from mandatory insurance coverage for a "hobby" car. According to the evidence of record, Hebert drove his classic car on the public roads of this

11

state.  That is precisely why the policy was changed via the Louisiana Endorsement, and why the policy must be read to provide liability and UM coverage which are mandatory under our state law to protect our citizens.

For the reasons as stated, we affirm the trial court's ruling except to amend it regarding the limits of coverage.  The policy clearly provides limits of coverage on the Declarations page which does not include the sum of $300,000.00 as mistakenly stated by the trial court in its ruling.  We hereby amend the trial court judgment to correct this misstatement and decree the limits of liability of this policy are $100,000.00 bodily injury and property damage per accident; $1,000.00 medical payments per person per accident; and $30,000.00 uninsured motorists bodily injury per accident.  All costs of these proceedings are assessed against Essentia.

**AFFIRMED IN PART, AMENDED IN PART, RENDERED**.

NUMBER 13-495

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

CLAYTON WALKER AND DANIELLE WALKER

VERSUS

JOSEPH HEBERT, ET AL.

AMY, J., dissenting on rehearing.

As in the original appeal, I respectfully dissent from the majority on rehearing. *See Walker v. Hebert*, 13-495 (La.App. 3 Cir. 2/12/14) (an unpublished opinion). Certainly, the critical inquiry in this case is whether the Essentia policy, entitled a "Classic Automobile Policy," excluded coverage for Mr. Hebert while driving a vehicle other than the named, "1969 Chevrolet Camaro" which was destroyed prior to the subject accident. Unlike the majority, I find no ambiguity in the exclusions. Further, I find that this classic automobile policy operates within the confines of pertinent legislation.

In listing its exclusions and as thereafter amended by its "Amendment of Policy Provisions – Louisiana[,]" the Essentia policy excludes liability coverage for any insured:

8.    Using:

. . . .

    b.    Any vehicle, other than "your covered auto", without the express or implied permission of the owner of such vehicle.

Thereafter, Exclusion Number 10, excludes liability:

10.    Arising out of ownership, maintenance, or use of any vehicle other than "your covered auto".

In my view, these exclusions simply address different factual circumstances. Pertinent to this case, Exclusion Number 10, which was not altered by either the Louisiana Conformance Endorsement or a subsequent amendment, excludes liability coverage for an "insured" "[a]rising out of the ownership, maintenance, or use of any vehicle other than 'your covered auto'." Exclusion Number 8, however, is invoked by a different factual situation, *i.e.*, one where permissive use is the focus. I do not see that any purported contradiction between the two exclusion implies coverage. *See Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191 (wherein the supreme court explained that an insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond that reasonably contemplated by its terms).

Rather, the Classic Automobile Policy clearly envisioned coverage limited to the unique use of a named, antique or classic car. The declaration sheet lists liability coverage limits of $100,000 per accident for bodily injury and property damage, $1,000 per person/per accident for medical payments, and $30,000 per accident for uninsured motorists bodily injury. Yet, the declaration sheet reports a charge of only $33 for bodily injury and property damage, $7 for uninsured motorists bodily injury. The remainder of the $292 total policy premium related to the policy's coverage for damage to the Camaro.

I further disagree with the plaintiff's assertion, and the lead opinion's determination, that the classic automobile policy is contrary to pertinent legislation. This policy defines "antique vehicle" and "classic vehicle" as follows:

J. "Antique vehicle" means a motor vehicle 25 years or more of age that:

1. Is maintained primarily for use in car club activities, exhibitions, parades, other functions of public interest or for a private collection and

2. Is used only infrequently for other purposes.

2

K. "Classic vehicle" means a motor vehicle of unique or rare design and of limited production that is an object of curiosity and:

1. Is maintained primarily for use in car club activities, exhibitions, parades, other functions of public interest or for a private collection; and

2. Is used only infrequently for other purposes.

Importantly, this infrequent, limited use of the antique/classic vehicle described by the policy's definitions mirrors an exception to the mandatory liability limit of La.R.S. 32:861, which requires that:

A. (1)  Every self-propelled motor vehicle registered in this state *except . . . those used primarily for exhibit or kept primarily for use in parades, exhibits, or shows*, . . . shall be covered by an automobile liability policy with liability limits as defined by R.S. 32:900(B)(2) or 900(M) . . . .

(Emphasis added.)  This legislative accommodation for a policy tailored for exhibit/parade automobiles undercuts the argument made in this case that the Essentia classic automobile policy is against public policy.

Similarly, and although the plaintiffs suggest that application of Exclusion Number 10 would contravene the public policy considerations of La.R.S. 32:900(C), both the classic automobile policy and the statutory framework seemingly accommodate that type of exclusion.  Louisiana Revised Statutes 32:900 generally sets forth various requirements for a motor vehicle liability policy, with Paragraph C requiring that:

Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him *of any motor vehicle not owned by him*, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

(Emphasis added.)  Importantly, however, La.R.S. 32:900(J) provides that:  "The requirements for a motor vehicle liability policy *may be fulfilled by the policies of*

3

*one or more insurance carriers* which policies together meet such requirements."

(Emphasis added.)

The Essentia policy, in fact, anticipates that multiple, complimentary policies will provide coverage to the insured. Reference to "Part F – General Provisions" of the Essentia policy reveals the requirement(s) that:

REGULAR USE VEHICLE REQUIREMENT

This policy provides coverage for your "antique vehicle" and/or "classic vehicle" shown in the Declarations. You must own a "regular use vehicle" which must be insured by a separate insurance policy which must be in effect for the entire time this policy is in effect. In no event will this policy serve as your only auto coverage.

. . . .

OTHER INSURANCE POLICIES

This policy provides coverage for your "antique vehicle" and/or "classic vehicle" and applies only to the vehicle(s) shown in the Declarations. Any other vehicles you own should be insured by a separate policy. In no event will this policy provide coverage for any vehicles other than those shown in the Declarations, or which are added to this policy by endorsement.

Thus, the policy not only anticipates, but requires a co-existing regular use vehicle automobile policy. I conclude that the regular use vehicle automobile policy and the classic automobile policy could, together, satisfy the omnibus requirement of La.R.S. 32:900(C) as permitted by La.R.S. 32:900(J). As an aside, I note that the plaintiffs' petitions in this matter allege that Mr. Hebert was insured by both Farm Bureau and State Farm automobile liability insurance policies.

Finally, the plaintiffs contend that La.R.S. 32:861(A)(1)'s exception for vehicles used primarily for use in parades, exhibits, or shows is inapplicable in this case as Mr. Hebert testified in his deposition that he used the 1969 Camaro for periodic drives, had used the car only once for a parade, and did not attend exhibits or shows. Similarly, the lead opinion suggests that Mr. Hebert used the Camaro as a hobby car instead. However, that point is irrelevant in my opinion and is

4

distracting from the true issue now involved. Simply, Essentia did not seek to avoid coverage due to an alleged lack of compliance with the terms of the classic automobile policy by Mr. Hebert and, in fact, the Camaro, hobby or not, had been destroyed before the subject accident. Rather, Essentia filed its motion for summary judgment on the basis that its classic automobile policy did not provide coverage due to the limited nature of the policy and by operation of Exclusion Number 10. Certainly, it cannot be argued that the Essentia policy would somehow provide coverage for conduct outside of its terms, conditions, and exclusions.

For these reasons, I respectfully dissent. On rehearing, I reiterate that I would vacate the summary judgment entered in favor of the plaintiffs, deny that motion, and enter summary judgment in favor of Essentia.

CLAYTON WALKER AND DANIELLE WALKER

VERSUS

JOSEPH HEBERT, ET AL.

**Pickett, J., concurring.**

I respectfully concur in the result. I agree that the liability limits mentioned in the judgment below must be corrected. I join the plurality in affirming the judgment of the trial court on the coverage issue. I do not, however, find it necessary to address the public policy arguments raised in the plurality opinion. Once we recognize the ambiguity created by the exclusions, we need go no further in the analysis.

In the original exclusion section of the policy, Exclusion 10 excludes liability coverage "[a]rising out of the ownership, maintenance, or use of any vehicle other that 'your covered auto.'" Nothing in the State Conformance Endorsement would provide coverage for this accident, as it leaves intact Exclusion 10. It deletes the language "involving 'your covered auto'" from Paragraph A (the liability coverage section) and changes Exclusions 5, 6, and 8. The Amendment of Policy Provision Endorsement, however, does create an ambiguity. The amendment changes paragraph 8 to read:

> We do not provide liability coverage for any insured:
> . . . .
> 8. Using:
>> a. "Your covered auto" without your express or implied permission; or

> b. Any vehicle, other than "your covered auto", without the express or implied permission of the owner of such vehicle.

This paragraph creates a condition whereby there is coverage for use of a vehicle that is not "your covered auto" if there is permission to use the vehicle. It clearly conflicts with Paragraph 10. This amendment must be given effect. There is no argument that Mr. Hebert did not have permission to drive his brother's vehicle. So, Exclusion 8(b) affords coverage while Exclusion 10 denies coverage. This is a classic ambiguity that must be resolved in favor of coverage.