COOKS, Judge.
hFACTS AND PROCEDURAL HISTORY
Clayton Walker (Plaintiff) was allegedly injured on September 22, 2009, when a vehicle driven by Joe Hebert (Hebert), and owned by his brother, Donald Hebert (Donald), pinned Plaintiff between the vehicle and a building. Hebert was insured with Essentia Insurance Company (Essen-tia) at the time of this accident on a policy covering his 1969 Chevrolet. Camaro with an effective policy period of March 15, 2009, through March 15, 2010. Plaintiff sued Hebert and Essentia among others. *116 Essentia filed a Motion for Summary Judgment asserting an exclusion provision in the policy rendered Essentia free from any responsibility for damages suffered by Plaintiff.
The trial court denied Essentia’s Motion for Summary Judgment finding the policy ambiguous because it contained provisions which both excluded and included coverage over non-owned vehicles being used by the insured. Essentia later filed a second Motion for Summary Judgment, and a Motion for Partial Summary Judgment, to which Plaintiffs filed Oppositions and a Cross Motion for Summary Judgment. The trial court again denied Essentia’s Motions and granted Plaintiffs’ Motion for Summary Judgment. The trial court specifically found “there was a policy in effect on the date of the accident” and the policy is “not against public policy.” Essentia asserted that the policy had been cancelled with an effective date of cancellation of September 22, 2009, 12:01 A.M. The accident occurred on September 22, 2009, after 12:01 A.M. The trial court found the policy provides coverage in the amount of “$100,000.00 per person and $800,000.00 per accident.” On the “Declarations” page of the policy coverage limits are set forth as: “A. Bodily Injury & Property Damage: $100,000.00 Per Accident [;] B. Medical Payments: $1,000.00 Per Person Per Accident [;] and C. Uninsured ^Motorists Bodily Injury: $80,000.00 Per Accident.” Essentia appeals the trial court judgment.
LEGAL ANALYSIS
Under the provisions of La.Code Civ. P. art 966(B)(2), a party is entitled to summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” We review summary judgments de novo “under the same criteria that govern the district court’s consideration of whéther summary judgment is appropriate.” Dronet v. Safeway Ins. Co., 95-1471, p. 2 (La.App. 3 Cir. 11/7/97), 703 So.2d 97, 99, citing Potter v. First Fed. Sav. & Loan Ass’n of Scotlandville, 615 So.2d 318 (La.1993). “A dispute as to the issue of whether, as a matter of law, the language in an insurance policy provides coverage to a party can properly be resolved within the context of a motion for summary judgment.” Id., citing Domingue v. Reliance Ins. Co., 619 So.2d 1220 (La.App. 3 Cir.1993).
Before we address the question of coverage we will address Essentia’s argument that even if there is coverage under the policy, the policy was cancelled prior to the accident for which coverage is sought. Relying solely on its representations in its Admissions of Fact, Essentia asserts that on November 4, 2009, Hebert signed a form cancelling his policy on his 1969 Ca-maro with a retroactive effective date of September 22, 2009, 12:01 A.M. Essentia asserts this came about through a series of events following the destruction by fire of Hebert’s Camaro on August 14, 2009. According to Essentia, Hebert advised them after the destruction of his car “he would want to cancel his policy if he did not buy another classic car to replace the insured 1969 Chevrolet Camaro lost in the fire.” They further assert that on October 28, 2009, Hebert informed them that as he had .not Ryet bought any replacement car he wanted to cancel the policy. According to Essentia’s Admission of Facts, Hebert “signed the policy cancellation form showing September 22, 2009, at 12:01 a.m. as the cancellation date,” and Essentia “received the cancellation form [on November 11, 2009] and cancelled the policy retroactive to September 22, 2009, at 12:01 a.m., the date on which Essentia and Mr. [Joe] *117 Hebert settled the amount for loss on the insured 1969 Camaro ...” The record does not contain a copy of this form. Be that as it may, if we accept Essentia’s “admissions of fact” these facts do not establish that coverage was not in effect on September 22, 2009, when the accident injuring Plaintiff Walker occurred. Under these alleged facts Hebert had not made a decision to cancel his insurance coverage when the accident involving Walker occurred, and did not come to that decision until just over a month later. Until then, the policy remained in effect as it was still within the original policy period. When the accident occurred on September 22, 2009, Walker and Hebert had vested rights in the insurance policy. This court has long recognized insurance policies cannot be canceled retroactively. Ceasar v. New England Ins. Co., 616 So.2d 850 (La.App. 3 Cir.1993). Additionally, Louisiana Revised Statutes 22:885(A) (emphasis added) provided in 2009 as follows:
Cancellation by the insured of any policy which by its terms is cancellable at the insured’s option or of any binder based on such policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation prior to or on the effective date of cancellation. In event the policy, or binder has been lost or destroyed and cannot be so surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured’s written statement setting forth the fact of such loss or destruction.
As the statute provides that notice of cancellation by an insured must be prior to or on an effective date of cancellation, it is clear that the. policy cannot be canceled retroactively. By Essentia’s own admission, Hebert did not send written |4notice to cancel his policy until after the accident involving Plaintiff occurred, and not until after the “effective date” of cancellation recited in the notice. Likewise, the insurance policy covering Hebert’s classic Ca-maro expressly provides the manner in which the policy may be cancelled by the insured (emphasis added):
Cancellation. This policy may be canceled during the policy period as follows:
1. The named insured shown in the Declarations may cancel by:
a. Returning this policy to us; or
b. Giving us advance written notice of the date cancellation is to take effect.
Under Essentia’s own version of the facts regarding the insured’s cancellation of the policy, Hebert did not give any notice of cancellation prior to September 22, 2009, thus that date cannot be the date, of cancellation as to do so runs afoul of both the contractual provisions of this insurance contract and the provisions of La. R.S. 22:885. We therefore hold, as did the trial court, the policy insuring Hebert’s Camaro was in effect on the date of Plaintiff’s accident.
Next, we must determine whether the policy provides coverage for Hebert while driving his brother’s vehicle. Essen-tia asserts that the policy specifically excluded coverage for any liability “arising out of the ownership, maintenance, or use of any vehicle other than ‘your covered auto.’ ” This provision appears in the basic policy under- the heading “Part A. Liability Coverage. Exclusions.” Plaintiffs assert the Essentia policy also contained an amendment of “Part A” of the policy expressly affecting policies issued to Louisiana residents. Our review of the record supports Plaintiffs’ assertion.
The trial judge found the policy provisions ambiguous and therefore found the ambiguity must be resolved in favor of coverage. We too, find Exclusions Num *118 ber 10 and 8, when read in full, are ambiguous, and, were they to be given |fieffect, would result in coverage for the reason relied on by the trial court. Exclusion Number 8 reads:
8. Using:
[[Image here]]
c. Any vehicle, other than “your covered auto” without the express or implied permission of the owner of such vehicle.
Exclusion Number 10 reads:
10. Arising out of ownership, maintenance, or use of any vehicle other than “your covered auto.”
If the language of Exclusion Number 8 had ended with a period after “your covered auto,” the two provisions would not be ambiguous, but the modifying phrase following “your covered auto” in Exclusion 8 renders it ambiguous with the simple statement in Exclusion 10. Such an ambiguity is construed in favor of coverage. Moreover, Louisiana law requires that the policy provide coverage to the insured when he is a permissive user of another person’s vehicle. Be that as it may, there are additional compelling reasons which lead us to the conclusion that the Essentia policy, as modified by the Louisiana Endorsement to bring it into conformity with the mandatory requirements of Louisiana law, provides coverage.
Essentia focuses on the wording of Exclusion Number 10 in the original Es-sentia policy. This focus is completely misplaced. The focus on deciding the issue of insurance coverage of a vehicle owned by a Louisiana resident must begin and end with the mandatory insurance provisions of Louisiana law applicable to all motor vehicles owned and operated in this state.
Louisiana Revised Statutes 32:900 provides in pertinent parts (emphasis added):
A. A “Motor Vehicle Liability Policy” as said term is used in this Chapter, shall mean an owner’s or an operator’s policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof |r,of financial responsibility, and issued except as otherwise provided in R.S. 32:899, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
B. Such owner’s policy of liability insurance:
(1) Shall designate by explicit description or by appropriate reference to all motor vehicles with respect to which coverage is thereby to be granted; and
(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
[[Image here]]
C. Such operator’s policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set *119 forth above with respect to an owner’s policy of liability insurance.
D. Such motor vehicle liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability, and shall contain an agreement or be endorsed that insurance is provided thereunder in accordance with the coverage defined in this Chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this Chapter.
[[Image here]]
E. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
[[Image here]]
(4) The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of the Chapter shall constitute the entire contract between the parties.
|7The only exception to mandatory coverage which could be applicable in this case is contained in La. R.S. 32:861(A)(1), for automobiles “used primarily for exhibit or kept primarily for use in parades, exhibits, or shows ...” It is a very narrow exception to Louisiana’s mandatory auto insurance law. There is no exemption from coverage in Louisiana for a “hobby” car such as Mr. Hebert’s classic car. According to his testimony, Hebert drove his car on the public roads for his own pleasure and only “exhibited” it in the sense that anyone coming to his home or seeing him drive by on the roadways could see his classic car. He did not drive it “primarily” in parades and he did not enter it in car shows or exhibitions.
Likewise, Louisiana law clearly requires the owner of any motorized vehicle in this state to carry minimum uninsured/underinsured motorist coverage (UM coverage) unless the insured signs a waiver indicating his refusal of UM coverage. See La. R.S. 22: 1295, and Bergeron v. Liberty Mut. Ins. Co., 12-86 (La.App. 3 Cir. 6/6/12), 92 So.3d 645, writ denied, 12-1538 (La.10/12/12), 98 So.3d 873, and Holloway v. Shelter Mut. Ins. Co., 03-896 (La.App. 3 Cir. 12/10/03), 861 So.2d 763, writ denied 04-87 (La.3/19/04), 869 So.2d 854. Hebert did not sign any waiver of coverage and his policy with Essentia reflects he had UM coverage in the amount of $30,000.00 per accident. Under the “State Conformance Endorsement — Louisiana” provisions, the policy changed “Exclusion Provisions” regarding uninsured motorists coverage replacing the original policy language of Exclusion (B) 3, which provided “[w]e do not provide Uninsured Motorists Coverage for ‘bodily injury’ sustained by any ‘insured’: Using your ‘covered auto’ without a reasonable belief that that ‘insured’ is entitled to do so” to read, as amended:
A. We do not provide Uninsured Motorists Coverage for ‘bodily injury’ sustained by:
[[Image here]]
|8[3] a. [Any ‘insured’ using]: “Your covered auto’ without your express or implied permission; or
b. Any vehicle, other than ‘your covered auto’, without the express or implied permission of the owner of such vehicle.
Essentia argues that such “exclusions” do not “provide” coverage, and, while that statement may be true, it gets Essentia nowhere. Louisiana law mandates a minimum UM coverage unless appropriately waived in writing. No one contends Hebert signed any written waiver of UM *120 coverage. Essentia could not issue a policy to Hebert in Louisiana without providing such coverage. Hebert’s Essentia policy contains mandatory UM coverage, as required by Louisiana law, and only exempts from such coverage two permissible scenarios, neither of which is applicable herein. This “exclusion” does not itself “provide” coverage, it' is required by law. This policy provision is consistent with other provisions in the policy which demonstrate the policy provides UM Coverage mandated by Louisiana law. Furthermore, on the declarations page of the policy, the policy explicitly sets forth under the heading “Liability Coverage”, Part C., “Uninsured Motorists Bodily Injury: $30,000.00 Per Accident.” Obviously the policy provides such coverage as amended by the Louisiana State Conformance Endorsement, aptly named as it brings the Essentia policy into conformity with Louisiana mandatory insurance laws. And, as La. R.S. 22:1295(l)(a)(iii) provides, the “requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.”
Essentia attempts to ignore Louisiana’s mandatory motor vehicle insurance requirements altogether. Instead, it relies on “a number of exclusions” in the original Essentia policy (a non-conforming policy) and rests on the language of Exclusion Number 10, finding that despite the changes mandated by the Louisiana |9State Conformance Endorsement, Exclusion Number 10 excludes coverage “[ajrising out of ownership, maintenance, or use of any vehicle other than ‘your covered auto.’ ” This policy provision can have no force or effect in Louisiana as it is contrary to our mandatory motor vehicle insurance laws. -See La.R.S. 32:900(C) infra.
Louisiana law does not permit any insurance company to include language in a policy covering a Louisiana motor vehicle owner to provide that its policy only extends to a particular vehicle rather than covering the owner, the person insured, when driving any automobile, including an automobile owned by someone else, if he is a permissive driver of that vehicle. Id. Hebert was a permissive driver of his brother’s vehicle. This provision appears in the basic policy under the heading “Part A. Liability Coverage. [Exclusions.]” Es-sentia was obviously aware that the original policy did not comport with Louisiana’s mandatory requirements. This is no doubt the very reason the Essentia policy also contained an amendment of “Part A” of the policy expressly affecting policies issued to Louisiana residents. The Policy reads: (emphasis added)
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
STATE CONFORMANCE ENDORSEMENT — LOUISIANA
The following amendment changes the policy to conform with Louisiana state laws. Please read your entire policy for full details about your coverages.
I. PART A — LIABILITY COVERAGE
A. Paragraph A. of the Insuring Agreement is replaced by the following:
INSURING AGREEMENT
We will pay damages for “bodily injury” or “property damage” for which any “insured” becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle *121 or defend ends when our limit of liability for this | incoverage has been exhausted by payment of judgments or settlements.
[[Image here]]
In addition to our limit of liability we will pay on behalf of an “insured”:
Prejudgment interest awarded against the “insured” on that part of the judgment we pay.
The above quoted policy language clearly provides coverage for this policy covering a Louisiana insured and as it plainly says, replaces paragraph (A) with a provision providing coverage under this policy for a Louisiana resident, such as Hebert, in conformity with Louisiana law. As our courts have repeatedly held:
When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and courts must enforce the contract as written. See, LSA-C.C. art.2046; Hill v. Shelter Mutual Ins. Co., 05-1783 (La.7/10/06), 935 So.2d 691, 694; Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1028. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy’s provisions are couched in unambiguous terms. Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577, 580; Succession of Fannaly v. Lafayette Ins. Co., 01-1355 (La.1/15/02), 805 So.2d 1134, 1138. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties’ intent. Edwards v. Daugherty, 03-2103 (La.10/1/04), 883 So.2d 932, 941; Succession of Fannaly, 01-1355 at 4, 805 So.2d at 1138; Peterson, 98-1712 at 5, 729 So.2d at 1029.
Calcasieu Par. Sch. Bd. v. Miller, 11-1107, p. 4 (La.App. 3 Cir. 6/6/12), 92 So.3d 1200, 1203 (emphasis added).
By the express terms of the policy, the Louisiana State Conformance Endorsement “[cjhanges the policy,” and, as the caption states, brings all of the policy provisions into conformity with Louisiana’s mandatory motor vehicle insurance laws. This fact is set forth in the endorsement in all capital letters, presumably to emphasize the change in coverage. It is followed by the admonition Into “read it carefully.” The endorsement which effected changes in the policy clearly and unambiguously states “We will pay damages for ‘bodily injury’ or ‘property damage’ for which any ‘insured’ becomes legally responsible because of an auto accident.” Nothing could be plainer. No one questions the fact that Hebert is the “insured” under the policy and he may become responsible for injury to Walker depending on the outcome of Walker’s suit. The policy clearly provides limits of coverage on the Declarations page which includes $100,000.00 bodily injury and property damage per accident; $1,000.00 medical payments per person per accident; and $30,000.00 uninsured motorists bodily injury per accident.
Essentia attempts to bolster its position by reference to the paucity of the annual fee charged for its policy, and by the reassurance that its classic car policy anticipates, yea, requires, a co-existing regular-use policy covering a more regularly used, non-classic vehicle. We reject Essentia’s contention as to the paucity of the fee charged. It was Essentia’s responsibility, and choice, as to how to determine its rate for the policy it issued which must comply with Louisiana law. We also reject Essen- *122 tia’s assertion that the exception in La. R.S. 32:861(A)(1) for exhibit/parade automobiles bolsters its argument that. the classic automobile policy at issue is not against public policy. That provision provides a very narrow exemption from mandatory liability insurance coverage only for an automobile “used primarily for exhibit or kept primarily for use in parades, exhibits, or shows.” Id. The only evidence of record introduced at the motion for summary judgment concerning Hebert’s use of his classic car as his hobby was his deposition testimony which establishes that his classic car did not qualify for the narrow exemption for cars “primarily used” for exhibition or in parades. There is no exemption from mandatory insurance coverage for a “hobby” car. According to the evidence of record, Hebert drove his classic car on the public roads of this 112state. That is precisely why the policy was changed via the Louisiana Endorsement, and why the policy must be read to provide liability and UM coverage which are mandatory under our state law to protect our citizens.
For the reasons as stated, we affirm the trial court’s ruling except to amend it regarding the limits of coverage. The policy clearly provides limits of coverage on the Declarations page which does not include the sum of $300,000.00 as mistakenly stated by the trial court in its ruling. We hereby amend the trial court judgment to correct this misstatement and decree the limits of liability of this policy are $100,000.00 bodily injury and property damage per accident; $1,000.00 medical payments per person per accident; and $30,000.00 uninsured motorists bodily injury per accident., All costs of these proceedings are assessed against Essentia.
AFFIRMED IN PART, AMENDED IN PART, RENDERED.
AMY, J., dissents on rehearing and assigns reasons.
GREMILLION, J., dissents for the reasons assigned by Judge AMY.
PICKETT, J., concurs and assigns written reasons.