WICKER, J.
|! Liberty Mutual Insurance Company (“Liberty Mutual”) appeals the trial court’s judgment denying its motion for summary judgment and granting the motion for summary judgment filed by Progressive Security Insurance Company (“Progressive”) and Krystal Himel Hutzler. At issue before this Court is whether Ms. Hutzler’s verbal " cancellation of her Liberty Mutual policy was sufficient to effect cancellation of the policy. Because we find that the trial coúrt correctly determined that Ms, Hut-zler’s verbal request to cancel her Liberty Mutual insurance policy was insufficient to effect cancellation, we affirm the trial court judgment.[1]
FACTS AND PROCEDURAL HISTORY
Ms. Hutzler obtained an automotive policy of insurance from Liberty Mutual, with an effective policy period from May IS, 2012 to May 13, 2013. On June 25, 2012, Ms. Hutzler purchased an automotive policy of insurance covering the same vehicle from Progressive, with an effective policy period-beginning on June 25, 2012. On July 10, 2012, Ms. Hutzler called Liberty Mutual to cancel her Liberty Mutual policy. While on the phone, Liberty Mutual conducted a policy review with Ms. Hutzler, after which Ms. Hutzler maintained her verbal request to cancel her policy. At Ms. Hutzler’s request, Liberty Mutual backdated her cancellation to June 25, 2012 (the date Ms. Hutzler purchased the Progressive policy). On July 10, 2012, Liberty Mutual sent Ms, Hutzler a final bill for $232.04, being the prorated premium amount due on her cancelled policy (ie., premium for the period from the policy’s May 13, 2012 inception date through the policy’s June 25, 2012 cancellation date).[2] When Ms. Hutzler failed to pay the bill, |2Liberty Mutual sent hér an automated email on July 31, 2012, advising her that the prorated premium' balance due' oh her policy after cancellation needed to be paid immediately to avoid the bill being sent to a collection agency. On August 20, 2012, Liberty Mutual sent Ms. Hutzler’s account to a collection agency. On September 7, 2012, the collection agency received payment in the amount of $232.04 for the prorated premium amount due on Ms. Hutzler’s cancelled policy.
On July 31, 2012, Ms. Hutzler was involved in a' tragic automobile accident in which her vehicle collided with a motorcycle being driven by Michael Barron, resulting in serious personal injuries'to Mr. Barron. On August 25, 2012, Mr. Barron died and on June 18, 2013⅛ Johnna Barron, as plaintiff on behalf of herself and her deceased husband, filed a survival and wrongful death action against Ms. Hutzler and Progressive,[3],[4]
*1163 On September 25, 2015, Progressive and Ms. Hutzler filed a third-party demand against Liberty Mutual, alleging that Ms. Hutzler’s Liberty Mutual policy was in effect on July 31, 2012, the date of the subject accident. The third-party • demand sought indemnity and/or contribution from Liberty Mutual for any and all amounts for which Ms. Hutzler was found liable.
On March 4, 2016, Liberty Mutual filed a motion for summary judgment, arguing that there was no indemnity or contribution available to Progressive or Ms. Hut-zler under the Liberty Mutual policy at issue because' that policy had been can-celled by Ms. Hutzler before the date of the subject accident. In response, Progressive and Ms. Hutzler filed a counter-motion for summary, judgment, seeking a. ruling that Liberty Mutual provided coverage to Ms. Hutzler for the subject accident, and asking the trial court to order Liberty Mutual to indemnify 1 ¡¡her for all amounts she is found liable to Mrs, Barron on the main demand as a result of the subject accident.
Following a hearing on the motions for summary judgment, in'a written partial final judgment rendered on June 2, 2016, the trial court denied Liberty Mutual’s motion for summary judgment, granted the motion for summary judgment filed by Progressive and Ms. Hutzler, and found that Liberty Mutual’s policy provided coverage to Ms. Hutzler for the July 31, 2012 accident. In its written reasons for judgment dated June 23, 2016, the trial court stated that it was “controlled” by the rulings of this Court and did not “have the option of ignoring [this Court’s] interpretation of La. R.S. 22:885” in Gandy v. United States Automobile Association, 97-1095 c/w 98-215 (La. App. 5 Cir. 10/14/98), 721 So.2d 34, writ denied, 98-2836 (La. 1/15/99), 736 So.2d 208. The trial court consequently found that La. R.S. 22:885 requires that an insured’s request to cancel his or her policy be in writing and, thus, Ms. Hutzler’s verbal request for cancellation was ineffective. Pursuant to this Court’s order, the trial .court issued an amended judgment, further ordering that Liberty Mutual indemnify Ms. Hutzler for any amounts she may be found liable to plaintiff, “up to the [Liberty Mutual policy’s] limits.” This timely appeal followed.
ANALYSIS
Appellate courts review a district court’s grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Parish of Jefferson v. Davie Shoring, Inc., 14-701 (La. App. 5 Cir. 2/11/15), 167 So.3d 925, 929, citing Bourgeois v. Boomtown, LLC of Delaware, 10-553 (La. App. 5 Cir. 2/15/11), 62 So.3d 166, 169. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to |4material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
Summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action, with specific, exceptions. La. C.C.P. art. 966(A)(2). The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or . defense, but rather to point out to the court the absence of factual support for one. or more elements essential to the adverse party’s claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the *1164 existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); see also Paternostro v. Wells Fargo Home Mortg., Inc., 09-469 (La. App. 5 Cir. 12/8/09), 30 So.3d 45, 47-48.
La. R.S. 22:885, entitled “Cancellation by the insured; surrender,” provides, in pertinent part:
A. Cancellation by the insured of any policy which by its terms may be cancelled at the insured’s option or of any binder based on such [ ¡¡policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation prior to or on the effective date of such cancellation. In the event the policy or binder has been lost or destroyed and cannot be surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured’s written statement setting forth the fact of such loss or destruction.
* * ⅜
(Emphasis added)
Likewise, La. R.S. 22:637, the precursor to La. R.S. 22:885, stated, in pertinent part:
A. Cancellation by the insured of any policy which by its terms is cancela-ble at the insured’s option or of any binder based on such policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation prior to or on the effective date of such cancellation. In event the policy or binder has been lost or destroyed and cannot be so surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured’s written statement setting forth the fact of such loss or destruction.
[[Image here]]
(Emphasis added)
In its first assignment of error, Liberty Mutual argues that the trial court erred in relying on this Court’s decision in Gandy, supra, and its interpretation of La. R.S. 22:637, asserting that Gandy erroneously interpreted La. R.S. 22:637 (now La. R.S. 22:885) as mandating that the exclusive manner in which an insured can cancel his or her policy is by written request or surrender of the policy to the insurer. Liberty Mutual argues that Gandy is factually distinguishable and, thus, is not instructive to the facts of this case.
In Gandy, while the plaintiff was trading in a leased vehicle, the salesman at the dealership called the plaintiffs insured, United Services Automobile Association (“USAA”), to confirm that insurance was available and to inform USAA of the trade. The plaintiff asked the salesman to further inform USAA that he wanted to terminate the coverage on another vehicle, a Suzuki motorcycle, as of October 10, 1995. Sometime between 10:30 p.m. on October 10, 1995, and 6:00 a.m. on October 11, 1995, while the plaintiff was at work, his Suzuki motorcycle was stolen. The plaintiff made a claim with USAA, but the claim was ultimately denied because the plaintiff could not prove that the theft occurred during the policy period, that is before 12:01 a.m. on October 11, 1995. The plaintiff filed suit against USAA and then filed a motion for summary judgment on coverage. The trial court granted the plaintiffs motion for summary judgment. Gandy, 721 So.2d at 35.
IfiOn appeal, this Court considered La. R.S. 22:637 (now La. R.S. 22:885) to determine whether a verbal request to cancel a policy by the insured was sufficient to effect cancellation of the policy. Gandy, 721 So.2d at 37. This Court found that the *1165 legislature, in La. R.S. 22:637, set forth a mechanism by which an insured could validly cancel his or her policy. This Court specifically addressed the identical issue presently before us and held, “we find that a verbal request by the insured party to cancel the policy is not sufficient to effect cancellation - by the insured prior to the insurable event.” Gandy, 721 So.2d 34, 37. This is the current, binding law in this Circuit.
On appeal, Liberty Mutual argues that this Court’s interpretation of La. R.S. 22:637 (now La. R.S. 22:885) has been rejected by the Louisiana First Circuit in Erdey v. Progressive Sec. Ins. Co., 09-1115 (La. App. 1 Cir. 12/23/09), 31 So.3d 417, writ denied, 10-0123 (La. 4/5/10), 31 So.3d 364, and relies on Erdey’s analysis to support its argument that Ms. Hut-zler’s verbal cancellation of the Liberty Mutual policy was effective. In Erdey, the First Circuit was presented with the question of whether or not a verbal request by the insured to cancel a policy was sufficient to effect cancellation of the policy. The plaintiff in Erdey obtained an automotive policy of insurance, coincidentally also with Progressive, with an effective policy period from June 15, 2005 to June 15, 2006. Erdey, 31 So.3d at 417-418. On October 15, 2005, the plaintiff called Progressive and told a representative that he wanted to cancel his policy effective immediately. The next day, Progressive sent him a notice that his policy was cancelled as of October 15, 2005, and refunded his unused premium. On October 17, 2005, the plaintiff contacted Brown & Brown to obtain a new insurance policy. Though he did not have the necessary information at first, the plaintiff claims he purchased a liability policy through Brown & Brown effective immediately. On that same day, the plaintiff was involved in an automobile accident, damaging his vehicle. He |7submitted a proof of loss to Progressive; however, Progressive denied the claim on the basis that the policy had been can-celled prior to the accident. As a result, the plaintiff filed suit against Progressive, arguing that the Progressive policy was in effect at the time of the accident because Progressive failed to properly cancel the policy in writing, as required by Louisiana law and the terms of the policy. The trial court ruled in the plaintiff’s favor. Erdey, 31 So.3d at 418.
On appeal, the First Circuit considered the policy language, the language of La. R.S. 22:885, and also this Court’s decision in Gandy. Regarding Gandy, the First Circuit stated that it disagreed with this Court’s analysis to the extent it found the statute to be unnecessary if a policy could be cancelled by an insured absent a writing cancelled prior to the accident. Despite the statute’s title, which reads “Cancellation by the insured; surrender,” the First Circuit conclusively opined that the statute’s primary purpose is to address the return of an insured’s unused premiums upon cancellation. Erdey, supra. The First Circuit further concluded that the legislature intended for an insured to be able to cancel his or her policy in a manner other than those provided in the statute. It found that if the legislature had meant to limit methods of cancellation as to only those in the statute, “it could have used the word ‘shall’ or ‘must’ or some other definitive directive as it did with regard to the notice required by the insurer to effect cancellation.” Erdey, 31 So.3d at 420. The court further considered that the plaintiffs Progressive policy also used the permissive term “may” with regard to cancellation by the insured, and thus did not limit the insured to cancelling a policy in writing only. Id.
The starting point in the interpretation of any statute is the language of the statute itself. Faget v. Faget, 10-0188 (La. *1166 11/30/10), 53 So.3d 414, 420. A law shall be applied as written when it is clear and unambiguous and its application does not lead to absurd consequences. La. C.C. art. 9. If, however, the law is susceptible to different meanings, the statute must be interpreted in a light best | ^conforming to the law’s purpose. La. C.C. art. 10. More specifically, if the words of the law are ambiguous, those words must be examined by looking at the context in which they occur and the text as a whole. La. C.C. art. 12.
The current split in the circuits, as well as the en banc consideration of this issue by this Court, demonstrates that the wording of La. R.S. 22:885 is not clear and unambiguous. Rather, it is susceptible to different meanings in the eyes of learned judges across this state. Given the ambiguity of La. R.S. 22:885 and the current posture of the law reflecting inconsistent interpretations of the law among the circuit courts of appeal, perhaps this issue is ripe for consideration by the Louisiana Supreme Court.
When the language of a’ statute is ambiguous, the Civil Code dictates the piroper method of interpretation is to pinpoint the purpose of the law and the legislative intent. We find that La. R.S. 22:885, which the legislature titled “Cancellation by the insured; surrender,” provides a means or method for an insured to cancel his,or her insurance policy. The statute provides that if the policy terms provide for cancellation, the insured may cancel the policy by written notice to the insurer and surrender of the policy or binder to the insurer prior to or on the effective date of such cancellation.[5] Id. Additionally, the statute sets forth an exception to the second requirement (surrender of the policy), and allows for written notice alone to be sufficient “[i]n the event the policy or binder has been lost or destroyed and cannot be surrendered,” provided that the written statement sets forth the fact of such loss or destruction of the policy.' Id. Although the statute contains the traditionally permissive “may” language, this Court finds that the permissive language is related to the fact of cancellation, allowing an insured to | ^terminate his or her contract with the insurer, rather than the method of cancellation.[6]
Upon en banc consideration of the record and applicable law, we find that *1167 Gandy is the applicable and instructive law in this Circuit. We therefore hold agáin that this Circuit’s interpretation of La. R.S. 22:885 instructs that an insured’s verbal request to cancel his or her insurance policy is ineffective.
Moreover, in this case, the language 'of the policy itself is similar to that provided in the statute. The policy language provides:
A. Cancellation. This policy may be can-celled during the policy period as follows:
1. The named insured shown in the Declarations may cancel by:
a. returning this policy to us; or
b. giving us advance written notice of the date cancellation is to take effect. (Emphasis through italics added.)
Accordingly, based on our above-stated interpretation of La. R.S. 22:885 and the permissive language contained in the Liberty Mutual policy itself, we find that Ms. Hutzler’s verbal request to Liberty Mutual on July 10, 2012 to cancel her policy was insufficient. Thus, Ms. Hutzler’s Liberty Mutual policy was in effect at the time of the subject accident and the trial court was correct in granting summary judgment in favor of Ms, Hutzler and Progressive as to the issue of coverage.
In its second assignment of error, Liberty Mutual asserts that the trial court erred in granting summary judgment on the issue of indemnity, ordering that Liberty Mutual must indemnify Ms. Hutzler for any amounts she is found liable, up to the amount provided in the Liberty Mutual policy. An action for indemnity | inis a separate substantive cause of action. Orlando v. E.T.I., 07-1433 (La. 12/12/08), 15 So.3d 951, 955 (quotations omitted)-. The Louisiana Supreme Court has stated that “[ijndemnity.. .means reimbursement, and may lie when one party discharges a liability which another rightfully should have .assumed... ”. Id. Although- a right of action for indemnity may be asserted through a third-party demand, as was filed -in this case, a cause of action for indemnity does not accrue until the party seeking indemnification or contribution suffers some loss, or is cast-in judgment. Id. at 958. Therefore, summary judgment on the issue of indemnity is inappropriate at this time. Accordingly, we reverse that portion of the trial court judgment ordering that Liberty Mutual indemnify Ms. Hutzler.
Accordingly, for the reasons provided herein, the trial court judgment granting Ms. Hutzler and Progressive’s motion for summary judgment, and denying Liberty Mutual’s motion for summary judgment, is affirmed in part, as to its finding that the Liberty Mutual policy at issue was in effect at the time of the July 31, 2012 accident, and reversed in part, as to the issue of indemnity.
AFFIRMED IN PART; REVERSED IN PART; REMANDED

. In accordance with the policy of this Court, this appeal has been reviewed by this Court on banc. Chief Judge Susan M. Chehardy and Judge Robert M. Murphy have recused themselves from participating in this appeal.

. This prorated bill included a $.04 unpaid balance carried over from Ms. Hutzler’s previous policy period with Liberty Mutual.

. Mrs. Barron’s suit was originally filed in East Baton Rouge Parish, but was later transferred to Jefferson Parish (24th Judicial District Court),

. Goldstar Electric, Inc, was also named as a defendant in said action; said entity is not involved in this appeal.

. Although not relevant to our analysis, we point out that Ms. Hutzler verbally requested that her policy be cancelled retroactively. The language in La. R.S. 22:885 provides that an insured must give notice of cancellation "pri- or to or on the effective date of cancellation.” See also Walker v. Hebert, 13-495 (La. App. 3 Cir. 12/10/14), 155 So.3d 114, 117 (wherein the Third Circuit recognized long-standing jurisprudence in that circuit holding that an insured may not cancel his or her policy ret- , roactively).

. See Whitley v. State, 11-0040 (La. 7/1/11), 66 So.3d 470 (wherein the Louisiana Supreme Court discussed an unrelated statute, which provided that' service of citation for the state "may be obtained” on various individuals. Although the Court applied the traditionally permissive "may” interpretation to hold that service may be effected on any of the individuals delineated in the statute, the Court implicitly found then that the language did not instruct that service "may be obtained'’ on any and all individuals, but only on the individuals delineated in the statute.- Similarly, La. R.S. 22:885 should be read to instruct that cancellation by the insured may be effected, only by the means delineated in the statute. Moreover, the Louisiana Supreme Court has recognized a jurisprudentially established exception to the general rule that "[t]he word ‘shall’ is mandatory and the word ‘may’, is permissive.” The Louisiana Supreme Court has found that ‘‘[i]n the'context of venue, this court has recognized that "the permissive ‘may’ and the mandatory 'shall' have often been interchanged.” Whitley, 66 So.3d at 477. This exception, at this time, has not been jurisprudentially extended to any other area of law.