# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-426

CALVIN LANDRY & MARY LANDRY

VERSUS

PROGRESSIVE SECURITY
INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20195163
HONORABLE DURWOOD CONQUE, JUDGE PRO TEM
PRESIDING FOR
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

**CANDYCE G. PERRET
JUDGE**

**********

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

**John Philip Graf**
**Anderson, Dozier, Blanda & Saltzman**
**Post Office Box 82008**
**Lafayette, LA   70598**
**(337) 233-3366**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **Calvin Landry**
     **Mary Brown Landry**

**Michael Patrick Corry**
**Christie Noel**
**Briney, Foret & Corry**
**Post Office Drawer 51367**
**Lafayette, LA   70505-1367**
**(337) 237-4070**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Financial Indemnity Company**

**Ian Alexander Macdonald**
**Jones Walker, LLP**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA   70501**
**(337) 593-7617**
**COUNSEL FOR OTHER DEFENDANTS:**
     **Progressive Security InsuranceCompany**
     **Riyadh Shaibi**

**PERRET, Judge.**

This case raises the issue of whether the failure of an insurer to afford coverage to its insured while operating a non-owned vehicle with permission, but while the insured's covered autos are operational and not in need of repair, violates Louisiana law and public policy. The trial court concluded the policy did not provide coverage to its insured under these circumstances. On appeal, we reverse and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND:**

Calvin and Mary Landry, Plaintiffs-Appellants, were involved in an accident with Riyadh Shaibi on July 1, 2019. The Landrys were traveling West on Mudd Road in Lafayette when Mr. Shaibi, who was traveling East, made a left turn across the westbound lanes allegedly causing the accident. At the time of the accident, Mr. Shaibi was driving a 2008 Toyota Sienna owned by his friend, Aziz Ali, and insured by Progressive Security Insurance Company ("Progressive"). Mr. Shaibi had permission to drive Mr. Ali's vehicle and was taking the vehicle to have a flat tire fixed as a favor to Mr. Ali. Progressive's policy provided the statutorily required $15,000/$30,000 policy limits and provided coverage in this case. Also, at the time of the accident, Mr. Shaibi was a named insured in a personal motor vehicle policy provided by Financial Indemnity Company ("Financial"), which policy covered Mr. Shaibi's 2005 Toyota Sienna and 2014 Nissan Altima.

The Landrys filed suit against Progressive, Mr. Shaibi, and Financial. Financial filed a motion for summary judgment arguing that its policy for Mr. Shaibi did not provide coverage for this collision. Financial claimed that the 2008 Toyota Sienna was neither a covered auto nor a non-owned auto under the terms of the policy. Financial attached the Petition for Damages, the Financial policy, and Mr.

Shaibi's deposition to the motion. Financial asserted that coverage only applied to the use of a "non owned auto" defined as a temporary substitute vehicle driven when the named insured's covered auto "is out of normal use because of its: (1) Breakdown; (2) Repair; (3) Servicing; (4) "Loss"; or (5) Destruction[,]" rental vehicles, or vehicles being test driven. Citing Mr. Shaibi's deposition, Financial asserted that because Mr. Shaibi's covered autos were capable of being used and he was voluntarily driving Mr. Ali's vehicle, which was also not a rental or test car, coverage did not apply.

The Landrys initially argued that the temporary substitute vehicle provision in Financial's policy conflicts with La.R.S. 22:1296(A), violates public policy, and leads to absurd results. The Landrys cited several cases in which they suggest our courts found similar temporary substitute vehicle provisions to be against public policy. However, the Landrys' altered their argument at the hearing to focus instead on whether Financial's limited definition of "non owned auto" contravened public policy. The trial court noted, "You're giving up on the temporary substitute which is the case you gave me." At the hearing, the Landrys argued that Louisiana's public policy provides that "the driver's insurance covers you when you temporarily or when you use a non-owned auto." The Landrys argued that coverage must apply to any non-owned auto used by the named insured. The district court disagreed with the Landrys and rendered judgment in favor of Financial, granting Financial's motion for summary judgment and dismissing Financial with prejudice. This appeal followed.

**DISCUSSION:**

The facts of this case are not disputed. Instead, on appeal, the Landrys assert that La.R.S. 32:900(C) requires motor vehicle liability policies to cover the named

2

insured when operating any non-owned vehicle; thus, Financial's policy defining a "non owned auto" in a manner that limits coverage to less than "any" non-owned vehicle driven by the insured violates that statute and public policy. Therefore, the Landrys argue, summary judgment was improperly granted. We agree that that the limitation in Financial's policy violates public policy and reverse the trial court's judgment.

When reviewing summary judgments on appeal, we apply the de novo review standard, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (citations omitted); La.Code Civ.P. art. 966. The mover carries the burden of proof; however, "if the mover will not bear the burden of proof at trial on the issue that is before the court" the mover need not "negate all essential elements of the adverse party's claim, action, or defense, but rather . . . point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action or defense." La.Code Civ.P. art. 966(D)(1). The burden then transfers to the adverse party to produce factual support to establish the existence of a genuine issue of material fact or that summary judgment is not proper as a matter of law. *Id.* The "motion for summary judgment shall be granted" if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, "show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3) and (4).

The Landrys assert that the coverage provided by Financial conflicts with La.R.S. 32:900 governing motor vehicle liability policies. Therefore, we must review both the policy language and statute.

"[W]hether, as a matter of law, the language in an insurance policy provides" a party coverage can be resolved on summary judgment. *Dronet v. Safeway Ins. Co.*, 95-1471, p. 2 (La.App. 3 Cir. 11/07/97), 703 So.2d 97, 99. However, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Reynolds v. Select Props., Ltd.*, 634 So.2d 1180, 1183 (La.1994). The interpretation of a statute is also a question of law subject to determination by summary judgment and to the de novo standard of review on appeal. *Grantham v. Johnson*, 13-1081 (La.App. 3 Cir. 3/5/14), 134 So.3d 164, *writ denied*, 14-701 (La. 5/30/14), 140 So.3d 1176.

In reviewing auto liability policies, this court has stated: "The focus on deciding the issue of insurance coverage of a vehicle owned by a Louisiana resident must begin and end with the mandatory insurance provisions of Louisiana law applicable to all motor vehicles owned and operated in this state." *Walker v. Hebert*, 13-495, p. 5 (La.App. 3 Cir. 12/10/14), 155 So.3d 114, 118, *writ denied*, 15-49 (La. 4/24/15), 169 So.3d 355 (plurality). The supreme court has also said that "[a]bsent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La.1994); *see also Gunn v. Auto. Cas. Ins. Co.*, 614 So.2d 154 (La.App. 3 Cir. 1993).

4

Financial's policy provides that Mr. Shaibi is the "Named Insured" and lists a 2005 Sienna and a 2014 Altima as covered vehicles. The Personal Auto Policy further provides:

> A. We will pay damages, except for punitive or exemplary damages, for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident arising out of the:
>
> 1. Ownership
> 2. Maintenance or use; or
> 3. Loading or unloading;
>
> of "your covered auto". . . .

"Your covered auto" is previously defined as:

> a. The vehicle(s) described in the Declarations.
> b. A 'newly acquired auto';
> c. Any owned 'trailer' while attached to a vehicle insured under this policy; or
> d. A 'non owned auto.'"

A "non owned auto" is defined as:

> [A]ny "private passenger auto" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
>
> a. Breakdown;
> b. Repair;
> c. Servicing;
> d. "Loss"; or
> e. Destruction.

The policy also provides that "any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for 'your covered auto', shall be excess over any other collectible insurance." Furthermore, the policy contains an amendment of provisions applicable to Louisiana policies, however those provisions do not alter the language in subsection "A" regarding

5

liability coverage. The Louisiana provisions do add to the definition of "non owned auto":

> "Non owned auto" means or refers to any "private passenger auto" you do not own while:
>
>> A. Used as a temporary substitute for "your covered auto" which is out of normal use because of its:
>>
>>> 1. Breakdown;
>>> 2. Repair;
>>> 3. Servicing;
>>> 4. "Loss"; or
>>> 5. Destruction.
>>
>> B. Rented by an "insured"; or
>>
>> C. Used by you or a family member for demonstration or test drive purposes.

Lastly, the Louisiana provisions also amend and add to the "OTHER INSURANCE" section as follows:

> 1. . . . . Except as provided in 2. and 3. below, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.
>
> 2. We will provide primary insurance for a vehicle you do not own if a person engaged in the business of selling, repairing or servicing motor vehicles provides a loaner vehicle to you or a "family member":
>
>> a. For temporary use while "your covered auto" is being serviced or repaired; or
>> b. To demonstrate or test drive the vehicle.
>
> 3. If the vehicle you do not own is a rental motor vehicle, the following priorities of recovery apply . . . .

Financial's policy restricts coverage for the use of non-owned vehicles to the use of only non-owned temporary substitute vehicles, non-owned rental vehicles, and non-owned test drive vehicles. Meanwhile, La.R.S. 32:900 (emphasis ours) states relative to operating non-owned vehicles:

6

C. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages **arising out of the use by him of any motor vehicle not owned by him,** within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

. . . .

F. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

. . . .

(4) The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of the Chapter shall constitute the entire contract between the parties.

Regarding statutory interpretation, our courts have stated the following:

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and its letter shall not be disregarded in search of the intent of the legislature or under the pretext of pursuing its spirit. *Munden v. State, Division of Administration,* 2001–2326, p. 4 (La.App. 1st Cir.5/9/03), 849 So.2d 639, 641, *writ denied,* 2003–1532 (La.10/03/03), 855 So.2d 310. A statute shall be construed to give meaning to the plain language of the statute, and courts may not extend statutes to situations that the legislature never intended to be covered. *A.K. Durnin Chrysler–Plymouth, Inc. v. Jones,* 2001–0810, p. 4 (La.App. 1st Cir.5/10/02), 818 So.2d 867, 870.

*Grantham*, 134 So.3d at 166-67 (quoting *Chamberlain ex rel. Wilmer J. v. Kennedy,* 03-488, pp. 5-6 (La.App. 1 Cir.12/31/03), 868 So.2d 753, 757.

The words of La.R.S. 32:900(C) are clear and unambiguous:  An operator's motor vehicle liability policy provides coverage to the named insured for damages that arise out of his use of "any" non-owned motor vehicle.  Thus, it appears that Financial's policy provisions restricting the definition of "non owned auto[,]" conflict with the broad language of La.R.S. 32:900(C) requiring coverage for the insured's use of "any motor vehicle not owned by" the insured.

7

However, we note that two cases point to the limitations in the applicability of La.R.S. 32:900(C). Louisiana Revised Statutes 32:900, is found in Part III of the Motor Vehicle Safety Responsibility Law entitled "Proof of Financial Responsibility," which places a duty on certain drivers to furnish security according to statutory requirements. The supreme court in *Simms v. Butler*, 97-416, pp. 2-3 (La. 12/2/97), 702 So.2d 686, 688 (emphasis added), noted the applicability of La.R.S. 32:900 in footnotes:

> [2] An "automobile liability policy" is to be distinguished from a "motor vehicle liability policy." A motor vehicle liability policy, as defined in La. R.S. 32:900(A), is "an owner's or an operator's policy of liability insurance, certified ... as proof of financial responsibility." **Proof of financial responsibility is required of persons who fail to satisfy final judgments**. La. R.S. 32:891-893. In addition, **drivers may be required to maintain proof of financial responsibility if they have been convicted of violating one of certain named offenses**. La. R.S. 32:896. Since nothing in the record suggests that the Butler's policy was certified as proof of financial responsibility, we consider the policy at issue to be an "automobile liability policy."
>
> [3] La. R.S. 32:900 applies to "motor vehicle liability policies." La. R.S. 32:900(B)(2) (the statutory omnibus clause) is the only provision of this statute which is incorporated into the automobile liability policy at issue. Hence, plaintiff's contention, that La. R.S. 32:900(C) (pertaining to operator's policies) is part of the Butler's liability policy, is without merit.

Citing *Simms*, the court in *Lemoine v. Illinois Nat. Ins. Co.*, 38,237 (La.App. 2 Cir. 3/12/04), 868 So.2d 304, *writs denied*, 04-926, 04-904 (La. 6/4/04), 876 So.2d 86, 87, concluded La.R.S. 32:900 only applies to motor vehicle liability policies as defined therein, which does not encompass all automobile liability policies. The second circuit determined that La.R.S. 32:900(C) did not apply to the policy at issue because there was no evidence that the policy was a motor vehicle liability policy:

> In footnotes, the *Simms* court distinguished an "automobile liability policy" from a "motor vehicle liability policy." The court noted that, aside from the statutory omnibus clause incorporated by law into all automobile liability policies, the provisions of La. R.S. 32:900 apply

8

only to "motor vehicle liability policies." A motor vehicle liability policy is defined as "an owner's or an operator's policy of liability insurance, certified ... as proof of financial responsibility...." La. R.S. 32:900(A). Because the policy at issue in *Simms* was an "automobile liability policy," and not a "motor vehicle liability policy" as defined by La. R.S. 32:900(A), the court found no merit to the argument that La. R.S. 32:900(C) was statutorily incorporated into the policy.

There is no indication that the policy at issue here is anything other than an automobile liability policy as in *Simms*. As such, La. R.S. 32:900(C) is not statutorily incorporated into the policy and does not mandate coverage for Boyer.

*Id*. at 310-11. As in *Simms*, we find nothing in the record that indicates the Financial policy was certified as proof of financial responsibility. Therefore, based on *Simms* and *Lemoine*, we cannot say that La.R.S. 32:900(C) is required to be statutorily incorporated into the Financial policy.

However, we find that Financial's restrictive definition of "non owned auto" violates public policy. The underlying purpose of automobile coverage and statutes governing that coverage is the protection of the public. *See Simms*, 702 So. 2d at 687 ("The Louisiana Motor Vehicle Safety Responsibility Law, La. R.S. 32:851–1043, provides a mandatory, comprehensive scheme for the protection of the public from damage caused by motor vehicles."). This outcome is supported by the discussion in *Walker*, 155 So.3d 114 (plurality), wherein this court interpreted a policy exclusion and concluded that the defendant's auto insurance policy provided coverage to the defendant while he operated his brother's vehicle. The court went on to state that La.R.S. 32:900(C) required coverage and that the failure to provide coverage for any non-owned auto the insured may operate was violative of Louisiana law.

In *Walker*, the defendant was operating his brother's car when an accident ensued. The defendant was insured by Essentia, which policy covered the

defendant's 1969 Camaro. Essentia filed a motion for summary judgment on coverage asserting that the policy excluded coverage for the defendant while operating a vehicle other than the named 1969 Camaro. The basic policy excluded coverage for the use of "[8.] c. Any vehicle, other than 'your covered auto' without the express or implied permission of the owner of such vehicle." *Id*. at 118. However, an amendment for Louisiana policies amended that section and excluded "10. Arising out of ownership, maintenance, or use of any vehicle other than 'your covered auto.'" This court found that the exclusions together were ambiguous as to coverage. The court noted that had the basic policy exclusion ended after the word "auto," no such ambiguity would exist. Thus, this court found that the ambiguity was to be construed in favor of coverage.

However, the plurality opinion[1] also reasoned: "Moreover, Louisiana law *requires* that the policy provide coverage to the insured when he is a permissive user of another person's vehicle." *Id*. The court continued:

> Essentia focuses on the wording of Exclusion Number 10 in the original Essentia policy. This focus is completely misplaced. The focus on deciding the issue of insurance coverage of a vehicle owned by a Louisiana resident must begin and end with the mandatory insurance provisions of Louisiana law applicable to all motor vehicles owned and operated in this state.

*Id*. The court quoted La.R.S. 32:900, emphasizing that policies are issued "to or for the benefit of the person named therein as insured[,]" and that those policies "shall

---

[1] Judge Pickett concurred with the outcome of the coverage issue. However, she found it unnecessary to "address the public policy arguments raised in the plurality opinion." *Id*. at 125. Instead, due to the ambiguity of the exclusions, Judge Pickett found that exclusion eight was to be given effect, which provided coverage to the defendant while operating a vehicle, other than the covered auto, with permission. Therefore, coverage in *Walker* was found due to the ambiguity of the exclusions, not based on La.R.S. 32:900(C) and public policy.

insure the person named as insured therein against loss . . . arising out of the use by him of any motor vehicle not owned by him." *Id*. at 119. The court explained:

> Louisiana law does not permit any insurance company to include language in a policy covering a Louisiana motor vehicle *owner* to provide that its policy only extends to a particular vehicle rather than covering the *owner, the person insured,* when driving any automobile, including an automobile owned by someone else, if he is a permissive driver of that vehicle.

*Id*. Thus, the court opined that the Louisiana amendment policy provision "can have no force or effect in Louisiana as it is contrary to our mandatory motor vehicle insurance laws. *See* La.R.S. 32:900(C) *infra*." *Id*. at 120.

We acknowledge that there have been varied outcomes in determining whether exclusions preventing coverage for certain non-owned vehicles are permissible. Several courts have upheld exclusions that deny coverage for certain types of non-owned vehicles. See *Gunn*, 614 So.2d 154 (permitting an exclusion of coverage for the operation of a non-owned motorcycle, which was not an "auto" under the policy; *Kinchen v. Lewis*, 02-2198 (La.App. 1 Cir. 2/3/03), 844 So.2d 36 (per curiam), *writs denied*, 03-648, 03-674 (La. 5/2/03), 842 So.2d 1106, 1108 (finding a business use exclusion could exclude coverage for the use of a non-owned dump truck, which was not a private passenger auto, in the insured's business or occupation); *Dees v. Nat'l Sec'y Fire & Cas. Ins. Co.*, 97-962 (La.App. 3 Cir. 2/11/98), 707 So.2d 137, (similarly upholding a business use exclusion and also determining that a second exclusion, excluding coverage while the insured drove a non-owned auto beyond the limits of that permission, applied). However, the case at bar involved a non-owned auto being operated with permission by the owner. The

11

vehicle involved also met the definition of both "auto"[2] and "private passenger auto"[3] provided in Financial's policy.  Thus, we find *Walker* more instructive in this instance.

Considering the overall goal of protecting the public and *Walker*, we find that public policy requires coverage for the named insured while operating a non-owned vehicle with permission in the fulfillment of a good deed for a friend.  Therefore, Financial's restrictive definition of "non-owned vehicle" for which coverage is provided, conflicts with public policy.  Accordingly, the trial court's judgment granting Financial's motion for summary judgment is reversed and the case is remanded for further proceedings.  Costs of this appeal are assigned to Financial Indemnity Company.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[2] "Auto" is defined in the policy as "a land motor vehicle designed primarily to be driven on public roads.  This does not include vehicles operated on crawler treads or rails."

[3] "Private passenger auto" is defined in the policy as:

"[A] licensed and registered four-wheel motor vehicle designed for private passenger use, including a:
    a.     Van; or
    b.     Pickup truck having four or six wheels that has a Gross Vehicle Weight Rating of 14,000 pounds or less.
A "private passenger auto" does not include any:
    a.     All-terrain vehicles;
    b.     Golf carts;
    c.     Tractors or farm equipment;
    d.     Vehicles operated on crawler treads or rails; or
    e.     Vehicles unable to reach or sustain a maximum speed of at least 55 miles per hour.